MILLER BROS. CO. v. STANDARD PLUMBING & HEATING CO. et al.

Eastern Section.   December 19, 1931.

Petition for Certiorari denied by Supreme Court, March 5, 1932.

Miller & Winston, of Johnson City, for appellant.

Miller, Miller & Martin, and Cox, Taylor & Epps, all of Johnson City, for appellee.

THOMPSON, J. This appeal involves a controversy between the Tennessee National Bank and the National Surety Company. Briefly stated, the controversy is as follows: The Bank loaned the Plumbing & Heating Company (which had contracts with Johnson City to do the plumbing and heating work in two school buildings which the city was having constructed with the proceeds of a bond issue which had been voted and sold for the purpose) a total of $3500, and took from it two assignments totaling that amount which were accepted by the City Recorder and Treasurer. After the completion of the work the City owed the contractor a total of $3,831.76 on the two jobs, but there were unpaid material and labor claims amounting to considerably more than said sum. The National Surety Company (surety on the contractor's bonds) paid these material and labor claims and took assignments thereof. When this litigation arose the City had $3,831.76, on deposit in said Bank, and after the institution of the litigation said Bank charged its (the City's) account with $3,500, and thus attempted to pay itself.

On the final hearing the Chancellor held that the Surety Company, by paying the material and labor claims and taking assignments thereof, became subrogated to all of the rights of the owners of said claims; that the assignments to the Bank were void; that the Bank was not entitled to charge or debit the City's account with $3500, and

thus pay itself, and that the Surety Company was entitled to recover said $3500, with interest from the date of the debit, from said Bank. Also the $331.76. The Bank has appealed to this court and has assigned errors.

The contracts were entered into on March 10, 1930. One of them covered the West Side School Building and was in the total sum of $11,404.26. The other covered the Columbus Powell School Building and was in the total sum of $10,942.56. Said contracts stipulated that the contract prices would be paid upon monthly estimates, but that the city was authorized to retain ten per cent of the estimates until final settlement. Also, that final payments should be due thirty days after the completion of the work. Also that the contractor should execute bonds in fifty per cent of the contract prices and conditioned as required by Acts 1899, ch. 182, and amendatory Acts, and that said bonds should become and be treated as parts of the contracts—the contracts and bonds being executed with reference to each other and forming completed instruments.

The contractor, Standard Plumbing and Heating Company, executed these bonds on March 21, 1930, with the National Surety Company as surety thereon. The bond on the West Side job was in the sum of $5702.13, and the one on the Columbus Powell job was in the sum of $5,471.28. They were conditioned as required by said Acts. The application for each of said bonds contained the following:

"That in further consideration of the execution of said bond, the undersigned (meaning the Plumbing & Heating Company) hereby assigns, transfers and conveys to the Company (meaning the Surety Company) all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to the undersigned at the time of any breach or default in said contract, or that thereafter may become due and payable to the undersigned on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that such money, and the proceeds of such payments and properties shall be the sole property of the Company and to be by it credited upon any loss, cost, damage, charge and expense sustained or incurred by it under said bond."

The Plumbing & Heating Company carried on the work but at the same time was doing work under other contracts, one of which was known as the Wexler job. By July 12, 1930, said Plumbing & Heating Company was badly in need of money and applied to the Bank for a loan of $3,000, offering as security an assignment of that amount of money—said assignment to be accepted by the City. On said date, July 12, 1930, said bank loaned the Plumbing & Heating Company $3,000, taking its note therefor. Said amount, less the discount, was put to the credit of said Plumbing & Heating Company

in said Bank—the net credit being $2,975. The assignment and acceptance thereof which the Bank took was as follows:

"Gentlemen:

"Please pay to the Tennessee National Bank, for value received the sum of Three Thousand Dollars, ($3,000.00) and oblige.
                                "Standard Plumbing & Heating Co.
                                        "By U. R. Mc Crary.
"Accepted this the 12th day of July, 1930
                                        "J. Allen Artz, Recorder."

On July 21, 1930, the Bank loaned the Plumbing & Heating Company $500, taking its note therefor, and the same, less discount, was put to its credit—the net credit being $495. .The assignment and the acceptance thereof which the Bank took on this occasion was as follows:

"City of Johnson City                            July 21, 1930.
"Gentlemen:

"Please pay to the Tennessee National Bank, the sum of Five Hundred Dollars ($500.00) for value received, to be paid out of the estimates due on the school jobs.
                                "Standard Plumbing & Heating Company,
                                        "By U. R. Mc Crary.
"Accepted this the 21st day of July, 1930.
                                        "J. Allen Artz, Recorder."

Neither the Surety Company nor any city official other than Mr. Artz, who was the City's Recorder and Treasurer, had any knowledge of these two assignments.

On July 12th and 21st, the amounts which the Plumbing & Heating Company had earned, including retained percentage and extras, was not quite as much as the amounts of the assignments, but if the work had all been completed on said dates there would have been more than the amounts of the assignments owing to said Plumbing & Heating Company.

Before taking the assignments and making the loans the Bank's vice-president spoke to the city's recorder and treasurer, Mr. Artz, and was told that it would be "all right" for the Bank to make the loans. However, it does not clearly appear just what was said in these conversations. The Bank's vice-president, who made the loans, was under the impression that the money would be used in paying for materials and labor on the school jobs, but it does not appear that the Plumbing & Heating Company made any express promise to this effect. After the loans were made the Bank did not attempt to see to it that the money was used in paying for materials and labor on the school jobs.

It seems that all of the proceeds of the $500, loan was used in paying for labor on the school jobs, but that only about half of the proceeds of the $3,000 loan was used in paying for materials or labor on said school jobs. The other half was used in paying for materials and labor on the Wexler job. However, it seems that about a similar amount of money from the Wexler job was used by the Plumbing & Heating Company in paying for materials and labor on the school jobs.

It appears that under the Charter Acts of the City its Recorder and Treasurer did not have authority to bind the city by his acceptances of the assignments and as soon as the Mayor, Commissioners and City Attorney learned of said acceptances the city repudiated them.

The work was completed and was accepted on September 4, 1930. This litigation was instituted on September 3, 1930.

When the work was completed and accepted the City owed the Plumbing & Heating Company on both jobs (including retained percentage and for extras) a total of $3,831.76, and this amount of money (the last of the proceeds of the sale of the bonds) was on deposit to the city's credit in said Bank.

On September 10, 1930, the Bank debited the City's said account with $3,500, thus attempting to pay itself under said assignments and notes.

As stated, the Surety Company paid the material and labor claims on both jobs and took assignment thereof.

It should have been stated that the Bank never gave or attempted to give any such notice, etc., as the Acts require of materialmen and laborers, etc.

It seems to us that under the foregoing facts the Chancellor was correct in holding that the rights of the materialmen and laborers in the $3,831.76,were superior to the rights of the Bank and that the Surety Company, having paid the claims of said materialmen and laborers and having thus become subrogated to their rights, had a superior right and equity over the Bank in and to said $3,831.76. We think that he was correct in holding that as to said materialmen and laborers and as to said Surety Company the assignments were void and that the Bank's attempt to charge or debit the City's account with $3500, and thus pay itself was illegal, wrongful and nugatory.

We have examined the authorities cited in the brief of the Bank and have considered the contentions made in its behalf, but in our opinion the decree of the chancellor was correct and the same will be affirmed, with costs.

Portrum and Snodgrass, JJ., concur.