**INDUSTRIAL BANK OF WASHING-
TON, Appellant,**

v.

**UNITED STATES of America et al.**

**No. 22790.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 22, 1970.

Decided March 9, 1970.

Mr. George H. Windsor, Washington, D. C., for appellant.

Mr. Walter H. Fleischer, Atty., Department of Justice, with whom Messrs. Thomas A. Flannery, U. S. Atty., and Morton Hollander, Atty., Department of Justice, were on the brief, for appellee, United States of America. Mr. Alan S. Rosenthal, Atty., Department of Justice, also entered an appearance for appellee, United States of America.

Mr. Geoffrey Creyke, Jr., Washington, D. C., for appellee, Reliance Insurance Co.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant Industrial Bank of Washington (Bank), on March 1, 1966, loaned money to Art's Decorating and Cleaning Company (Contractor), on the security of the Contractor's assignment to the Bank of all moneys due or to become due from the Government under contract executed October 29, 1965, for rendering by Contractor of cleaning services at a General Services Administration (GSA) building. The Bank gave notice of its assignment to the GSA, and to appellee Reliance Insurance Company (Surety) which had, under date of November 3, 1965, executed a performance bond to protect the Government against loss occasioned by the failure of the Contractor to perform the contract. On May 14, 1966, the Contractor defaulted. GSA terminated the contract and entered into a replacement contract that resulted in a contract loss to the Government.

Payments due the Contractor under the contract for services performed amounted to $4685. The Bank claimed the money due it from the Contractor on the loan, some $3896, plus interest. The Government declined to pay this on the ground that the unpaid balance will be set off against the Contractor's indebtedness to the United States resulting from the termination and reprocurement from another source.

The Bank brought an action against the United States, joining the Surety as a defendant, basing jurisdiction on the Tucker Act, 28 U.S.C. § 1346. The Government contested jurisdiction, and in the alternative sought summary judgment. The Surety also sought summary judgment. So did plaintiff Bank. The District Court, assuming jurisdiction for purposes of decison, granted the motion of each defendant for summary judgment, and denied the Bank's motion. We affirm the dismissal of the Bank's action with prejudice.

1. The District Court had jurisdiction of the action under the Tucker Act, which gives the District Courts concurrent jurisdiction with the Court of Claims of any civil action against the United States, not exceeding $10,000 in amount, founded upon any contract with the United States. 28 U.S.C. § 1346 (1964). Plaintiff sues on its rights pursuant to an assignment, expressly authorized by the Assignment of Claims Act of 1940 as amended,[1] from one who had a right founded on a contract with the United States.

The Government invokes United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Sherwood, which involved an action by a judgment creditor, held that the Court of Claims had no jurisdiction, and hence the Tucker Act was inapplicable, where the plaintiff's right to maintain the action against the United States was dependent on a prior and prerequisite determination of plaintiff's right to maintain his action against a private party (the judgment debtor). Since the Bank's action at bar against the United States is not dependent on a prior determination that it had a right to maintain an action

1. 31 U.S.C. § 203, 41 U.S.C. § 15.

against a private party, and could have been brought without bringing in a third-party defendant,[2] it is hard to see how the court's jurisdiction would be lost even assuming the Bank erred in combining its action against the United States with an action against a private party (Surety).

In any event, the jurisdiction of the Court of Claims was importantly expanded by the 1944 provision that the Court of Claims may summon any person to appear as a party in any suit to defend his interest, if any, in the suit. 41 U.S.C. § 114(b). Though this provision was contained in the Contract Settlement Act of 1944, it has been held not limited to cases arising under that act, and to be applicable to permit a bank-assignee to be brought in as party defendant on the petition of a plaintiff surety claiming unpaid balances.[3]

■ 2. Proceeding to the merits, the Surety rightly points out that it is established doctrine that the surety on a performance or payment bond has a right of subrogation, derived from the right to resort to the remedy the United States was capable of asserting against the contractor, resulting in priority of undisbursed contract funds.[4]

■ The Bank relies on the wording of the Assignment of Claims Act of 1940, as amended, as establishing a higher right in the assignee bank. The 1940 statute removes a disability on the bank to enforce its assignment of a claim against the Government. The words of the act are not properly applied if, following a termination for default, they are construed to give the bank as assignee of the contractor a right to funds in the hands of the Government which are needed for completion of the contract. The surety, upon completion of the contract, or payment of the funds needed for completion of the contract becomes entitled to those funds as the subrogee of the Government; its equitable right of subrogation relates back to the time of the giving of the bond; and it has priority over the subsequent right obtained by the bank by virtue of the assignment which was taken with knowledge of and subject to the equity of the surety. This is the view of the Court of Claims, the leading case being Royal Indemnity v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736 (1950), which was cited with approval in Pearlman v. Reliance Insurance Company, 371 U.S. 132, 141, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

We give weight on a matter like this to what has become the established doctrine of the Court of Claims,[5] since it has principal jurisdiction of these questions, and there has been no indication of concern or disapproval by Congress. The Bank calls to our attention statements by the Fifth Circuit giving assignee banks complete priority over the surety.[6] In American Fidelity Co. v. National City Bank of Evansville, 105 U.S.App.D.C. 312, 316, 317, 266 F.2d 910, 914, 915 (1959), however, this court voiced reasoning along the same lines as that expressed in decisions of the Court of Claims:

> When a surety on a Government contractor's performance bond makes a payment thereunder to or for the

2. See e. g. Chelsea Factors, Inc. v. United States, 181 F.Supp. 685, 149 Ct.Cl. 202 (1960).

3. Maryland Casualty Co. v. United States and Fidelity Trust Co., 141 F.Supp. 900, 135 Ct.Cl. 428 (1956); Seaboard Sur. Co. v. United States, 144 Ct.Cl. 686, cert. denied sub nom. Haltom City State Bank v. Seaboard Surety Co., 359 U.S. 1001, 79 S.Ct. 1140, 3 L.Ed.2d 1031, (1959).

4. Henningsen v. U. S. F. & G. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); Prairie State National Bank v. United States, 164 U.S. 227, 232, 17 S.Ct. 142, 41 L.Ed. 412 (1896).

5. Speidel, Stakeholders, Payments under Federal Construction Contracts—Payment Bond Surety vs. Assignee, 47 Virginia Law Rev. 640, 661 (1961).

6. Coconut Grove Exchange Bank v. New Amsterdam Cas. Co., 149 F.2d 73, 77 (5th Cir. 1945); General Casualty Co. v. Second National Bank of Houston, 178 F.2d 679 (5th Cir. 1950).

United States, he is subrogated to the rights of the Government as to any funds due or to become due under the contract. This subrogation, sometimes called an "equitable lien," relates back to the date of the bond, and is therefore superior to any conflicting claim thereafter asserted by another.

\* \* \* \* \* \*

\* \* \* This right is potential only until the contractor's default causes the surety to pay. It is a shadowy thing until it is given substance by the occurrence of a loss to the surety; theretofore a mere right to subrogation, it then becomes an actuality. And the law gives the surety the added advantage of having subrogation effective as of the date of his original undertaking.

 This court, analyzing the provisions of the 1940 law, held the Government precluded from recovering amounts already paid to the assignee bank even after default, in the absence of fraud, and that hence the surety's right of subrogation gave it no rights against the bank for such funds. But its reasoning establishes that a contrary result is applicable as to funds still in the hands of the Government, that the bank is not entitled to these funds if needed by the Government to complete the contract or pay for the work needed to complete the contract, and that the surety making such payments has a right of subrogation as to those funds. Our 1950 decision was accomplished by a careful review of the authorities, the pre-1940 pronouncements of the Supreme Court, the post-1940 decisons of the Court of Claims and other courts. The Fifth Circuit's analysis, which our 1950 case cited for another point, was not persuasive on this issue. We adhere to the reasoning already stated by our court.

We have no occasion to consider any questions that may arise concerning funds in the hands of the Government in excess of those required to complete the contract.[7] The judgment dismissing the Bank's claim with prejudice will be

Affirmed.[8]

---

7. *Compare* Framingham Trust Co. v. Gould-National Batteries, Inc., 307 F. Supp. 1008 (D.Mass. 12/30/69).

8. The Government's motion for summary judgment claims that it is entitled to exercise its set-off even assuming that the Bank would be entitled to prevail in a private action against the Surety. Assuming appropriate contract provision, the claim of an assignee bank to contract proceeds in the hands of the Government is not subject to set-off for indebtedness of the contractor to the Government "which arises independently of such contract." 31 U.S.C. § 203. While that term has been broadly interpreted, so as to favor the assignee, *see* Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953), it would seem inapplicable here. But we see no reason to base our ruling on this ground and thus leave open the prospect of what we have concluded will be a fruitless litigation between the private parties.