**THIRD NATIONAL BANK IN NASHVILLE, Appellee,**

v.

**HIGHLANDS INSURANCE COMPANY, Appellant.**

Supreme Court of Tennessee.

Aug. 25, 1980.

Dan E. McGugin, William P. Sutherland, Watkins, McGugin, McNeilly & Rowan, Nashville, for appellant.

I. C. Waddey, Jr., Andrew S. Neely, Waddey, Lundin & Newport, Nashville, for appellee.

## OPINION

COOPER, Justice.

This is an action to determine the priority of claims against the proceeds of a judgment secured by a contractor against the owner of an improvement built by the contractor. The claimants are (1) the surety of the contractor that advanced monies to pay material and labor claims, who has an assignment from the contractor of the proceeds of the judgment as security for payment of the monies advanced, and (2) a bank holding a security interest in the contractor's inventory, accounts receivable and contract rights.

Par–Lac Corporation, a construction company, contracted to erect a building for the Kirby Building Systems, Inc. On April 16, 1973, Highlands Insurance Company issued a Labor and Material Payment Bond in favor of Kirby on behalf of Par–Lac. As a corollary to the issuance of the bond, Par–Lac agreed in writing to indemnify Highlands against any loss resulting from claim on the bond, in the following language:

5. The Indemnitors (Par–Lac) hereby assign, transfer, pledge and convey to the Surety (Highlands Insurance Company) . . . as collateral security, to secure the obligations hereunder . . ., all of their rights under the contracts, referred to in such bonds, including their right, title and interest in and to . . . (3) any and all sums due or which may thereafter become due under such contracts.

A dispute arose between Kirby and Par–Lac and Kirby withheld approximately $44,-000.00 claimed by Par–Lac under the construction contract. Par–Lac then was unable to pay all its materialmen and laborers. The three not paid registered Notices of Liens and filed suits against Kirby and Par–Lac to collect their claims. Kirby made demand on Highlands, as surety of Par–Lac to pay claims totalling $44,249.28. After negotiations, Kirby agreed to pay that part of the withheld funds indisputably due Par–Lac and Highlands advanced the additional $22,191.65 needed to pay the lien creditors. The parties agreed that if Par–Lac recovered from Kirby any part of the monies allegedly due under the contract, those funds would go to reimburse Highlands for the monies it advanced to pay the lien claims. On October 15, 1974, as security, Highlands took an assignment of Par–Lac's judgment against Kirby, which was then on appeal. Highlands did not file a financing statement, nor did it record the assignment.

On January 16, 1975, Par–Lac executed an agreement granting the Third National Bank in Nashville a security interest in all of Par–Lac's inventory, accounts receivable and contract rights, together with all proceeds thereof, to secure an indebtedness of approximately $60,000.00. The bank filed a financing statement on January 31, 1975.

Judgment was subsequently entered in the Court of Appeals on Par–Lac's action against Kirby. The judgment was satisfied and the proceeds were paid to Highlands. The bank contended that it held a perfected security interest in the proceeds of the judgment and should prevail over Highlands since Highlands had failed to file a financing statement or to record its assignment.

In answer, Highlands asserted that "it had priority and a superior right to the contract funds . . . as surety and subrogee . . .," and that it was not necessary for it to file a financing statement to protect the priority of its claim.

Both Highlands and the bank moved for summary judgment, with Highlands insisting specifically that T.C.A. § 47–9–104(h) is dispositive of the rights of the parties to the proceeds of the judgment.

On considering the motions, the chancellor concluded that the claim of the surety company was prior to that of the bank. The Court of Appeals agreed with the chancellor that an assignment of a security interest in a judgment is specifically excluded from the ambit of Article Nine of the Uniform Commercial Code by Section 47–9–104(h); however, the majority of the court, citing T.C.A. §§ 64–2401 and 64–2603, were of the opinion that an assignment of a security interest in a judgment is an assignment of a security interest in "property" and consequently must be recorded in the county where the assignor "resides and, in case of his nonresidence, where the property is;" otherwise, it has no validity as to subsequent creditors, such as the bank. The Court of Appeals reversed the chancellor and awarded the bank the proceeds of the judgment against Kirby.

We concur in the conclusion of the chancellor and the Court of Appeals that the assignment of a right represented by a judgment as collateral for a loan is expressly excluded from the filing provisions of the Uniform Code. See T.C.A. § 47–9–104(h); *Law Research Service Inc. v. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836 (2d Cir. 1974); *McIlroy Bank v. First National Bank*, 252 Ark. 558, 480 S.W.2d 127 (1972). We question, however, that the assignment in this case was an assignment of a right represented by a judgment, but rather think that it properly should be classified as an assignment of a chose in action or an account. At the time the assignment was executed, the decree of the chancery court that was the predicate of the assignment was on appeal to the Court of Appeals. Under the appellate rules then in effect, an appeal completely vacated the decree of the chancery court. See T.C.A. § 27–301. See also, *Southland News Company v. McDade*, 60 Tenn.App. 351, 447 S.W.2d 29 (1968), wherein it is pointed out that

> The effect of a broad appeal to the Court of Appeals is to transfer the entire case as to all the parties for a hearing de novo and reexamination of the whole matter of law and fact appearing in the record and the Court of Appeals will, therefore, try the cause as though it had originated in that court and render such decree as should have rendered by the Chancellor.

However, as we view the circumstances of this case, the priority of Highlands' claim does not turn upon the classification of the subject matter of the assignment, but rests on the doctrine of subrogation. "Legal subrogation [as distinguished from conventional and statutory subrogation] arises out of a condition or relationship by operation of law where a person having a liability or a right or a fiduciary relationship in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditors whom he has paid." 83 C.J.S. *Subrogation* § 3a. See also, *Shelby Mutual Insurance Company v. Clark–Holmes, Inc.*, 57 Tenn.App. 42, 414 S.W.2d 650; *Finance Company . of*

*America v. U. S. Fidelity and Guaranty Co.,* 277 Md. 177, 353 A.2d 49 (1976). Generally, where a surety under a contractor's performance bond is compelled by reason of the contractor's default, to complete the contract or to pay materialmen and laborers, the surety is subrogated to the rights of the contractor and the laborers and materialmen whose claims were paid to monies earned by the contractor before default, and this is so independently of assignments. *See* 83 C.J.S. *Subrogation,* §§ 46 and 59d (1953); 17 Am.Jur.2d, *Contractor's Bonds,* §§ 42 and 107 (1964). *Cf. Miller Bros. Co. v. Plumbing & Heating Co.,* 15 Tenn.App. 102 (1931); *Farmer's Bank v. Hayes,* 6th Cir., 58 F.2d 34, cert. den. 287 U.S. 602, 53 S.Ct. 8, 77 L.Ed. 524 (1932). Under this general rule as pointed out in *Finance Co. of America v. U. S. Fidelity and Guaranty Co.,* 277 Md. 177, 353 A.2d 249 (1976), "The surety, in a sense, is 'secured' by its right of subrogation, which relates back to the issuance of the bond to defeat intervening creditors. *See Henningsen v. United States Fid. & Guar. Co.,* 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); *Prairie State Nat. Bank v. United States,* 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Industrial Bank of Washington v. United States,* 138 U.S.App. D.C. 19, 424 F.2d 932 (1970); *Western Casualty and Surety Co. v. Brooks,* 362 F.2d 486 (4th Cir. 1966); *Gray v. Travelers Indemnity Co.,* 280 F.2d 549 (9th Cir. 1960); *Massachusetts Bonding & Ins. Co. v. Fago Construction Corp.,* 82 F.Supp. 619 (D.Md.1949); *Canter v. Schlager,* 358 Mass. 789, 267 N.E.2d 492 (1971)." The right of subrogation, being created by operation of law and not by written instrument, is not subject to recordation under T.C.A. § 64–2401. Neither is it within the scope of § 9–302 of the Uniform Commercial Code, which requires the filing of a financing statement to perfect a security interest. *Finance Co. of America v. U. S. Fidelity & Guaranty Co.,* 277 Md. 177, 353 A.2d 249 (1976), and numerous cases there cited.

As is pointed out in *Finance Co. of America v. U. S. Fidelity & Guaranty Co., supra* 353 A.2d at 253.

Section 1–103 of the UCC provides that "[u]nless displaced by the particular provisions of . . . [the UCC], the principles of law and equity . . . shall supplement its provisions . . . ." Nothing in the provisions of Title 9 regarding secured transactions expressly or implicitly refutes the application of subrogation; in fact, § 9–102 implicitly recognizes the continued vitality of the doctrine. That section, entitled "Policy and scope of title," refers to security interests created by contract. This Official Comment states in part:

"The purpose of this section is to bring all consensual security interests in personal property and fixtures . . . under this Title . . . .

" . . . [T]he principal test whether a transaction comes under this Title is: Is the transaction intended to have effect as security? . . . "

As heretofore indicated the right of subrogation does not depend on contract, nor is it intended to have effect as a security interest. Section 1–201(37) of the UCC defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation . . . [including] any interest of a buyer of accounts . . . or contract rights. . . . " Plainly, the surety is secured by the opportunity to complete the contract and apply any available funds to its costs, not by an interest in personal property or fixtures. Neither is the surety a buyer of accounts or contract rights. *See* § 9–106; *National Shawmut Bk. of Boston v. New Amsterdam Cas. Co.,* 411 F.2d 843 (1st Cir. 1969).

That it was not the intent of the UCC to impair the surety's equitable right of subrogation, or to make it subject to the filing provisions of Title 9, is similarly manifest from the Code's history. Proposed § 9–312(7) of the 1952 Official Draft would have provided that "[a] security interest which secures an obligation to reimburse a surety . . . secondarily obligated to complete performance is subordinate" to a later lender.

The draftsmen deleted the section in 1953, explaining that it changed settled law under which "the surety's rights come first as to the funds owing by the owner . . . ." *See* Uniform Laws Annotated, Uniform Commercial Code, Official Draft, Text and Comments, at 773, 777 (1952); Uniform Laws Annotated, Uniform Commercial Code, Changes in Text and Comments, at 25–26 (1953). Since no draft of the UCC has ever contained an express filing requirement for sureties, and since subrogation rights are not "security interests" within the meaning of Title 9, this rejection of even a partial preemption of subrogation rights is indeed cogent evidence that the filing requirements were not intended to impair the rights of subrogation. *See National Shawmut Bk. of Boston v. New Amsterdam Cas. Co., supra,* 411 F.2d at 846; *Canter v. Schlager,* [358 Mass. 789, 267 N.E.2d 492 (1971)] at 495; White and Summers, *Uniform Commercial Code,* § 22–5 (1972); Coogan *et al., The Outer Fringes of Article 9,* 79 Harv.L.Rev. 229, 230 (1965).

In this case, there is no question but that the judgment proceeds sought to be recovered from Highlands by the bank represent money due Par–Lac by Kirby under the construction contract for which Highlands was surety on a Labor and Material Payment Bond. Neither is there any question but that Highlands advanced the money needed to satisfy labor and material liens against the Kirby property, nor that the payment of the lien claims was made only after demand by Kirby based on the Labor and Material Payment Bond. Under these circumstances, in equity, Highlands became subrogated to the rights of the lien claimants and of Par–Lac to money owed by Kirby under the construction contract. Highlands, standing in the shoes of .Par–Lac and the lien claimants, is entitled to the proceeds of the judgment against Kirby to the extent of the monies advanced to pay the lien claims.

Judgment of the Court of Appeals is reversed. Judgment will be entered in this court dismissing the bank's action, with costs being adjudged against the bank and its surety.

BROCK, C. J., and FONES and HARBISON, JJ., concur.