IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2000 Session

## ASSOCIATES HOME EQUITY SERVICES, INC.
## v. FRANKLIN NATIONAL BANK

**Appeal from the Chancery Court for Davidson County**
**No. 99-3037-I     Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2000-00516-COA-R3-CV - Filed March 26, 2002**

_____

In this appeal Associates, a mortgage company, appeals the trial court's holding that it was not entitled to equitable subrogation to the rights and priority of earlier mortgagees whose loans it paid off. Franklin, another mortgage company, made a loan to the same property owners one day before Associates made its loan and recorded its deed of trust three days before Associates recorded its deed of trust to the same real property. Associates claims that, although Franklin recorded first, Associates is entitled to priority pursuant to the doctrine of equitable subrogation. Franklin filed a Motion for Judgment on the Pleadings, which the trial court granted. We find that because the remedy of equitable subrogation is an equitable one dependent upon the facts and circumstances of the situation and the equities between the parties, judgment on the pleadings was inappropriate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded.**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Stephen C. Small, C. Dewees Berry, IV, Nashville, Tennessee, for the appellant, Associates Home Equity Services, Inc.

J. Timothy Street, Franklin, Tennessee, for the appellee, Franklin National Bank.

**OPINION**

On two consecutive days, two different lending institutions, Franklin National Bank and Associates Home Equity Services,[1] loaned money to Ronnie R. Lampley and wife Debra A. Lampley, each loan to be secured by the same real property at 400 Achievement Drive in Nashville,

_____

[1]Associates' predecessor, Ford Consumer Finance Company, actually made the loan.

Tennessee. The first of these two loans was made by Franklin in the amount of $75,500 on July 24, 1997. Associates made its loan the next day, July 25, 1997, in the amount of $102,886.72.

The Associates' loan was closed on July 25, 1997, and funded on July 31. The deed of trust securing the loan was recorded August 7, three days after Franklin recorded its deed of trust on the same property.

Franklin declared the Lampleys in default under the Franklin Mortgage, and published a notice of foreclosure sale for October 22, 1999. Associates filed this action and sought a temporary restraining order to prevent the sale. The temporary restraining order was denied, and the foreclosure sale went forward. After reading the Notice of Foreclosure at the sale, the substitute trustee announced that the property might be sold subject to, among other matters, the Associates' deed of trust. The property was then sold to JMC Properties, but JMC Properties never closed on the property. Franklin submitted the only other bid at the foreclosure sale; therefore, the property was conveyed to it. Franklin sold the property to a third party and the proceeds of that sale were tendered to the Clerk and Master.

Associates' lawsuit claimed that, while Franklin's mortgage was recorded first, Associates still had priority under the doctrine of equitable subrogation because the monies that Associates loaned to the Lampleys paid off two earlier mortgages.[2] Franklin filed a Motion for Judgment on the Pleadings pursuant to Tenn. R. Civ. P. 12.03. The trial court granted judgment on the pleadings and dismissed Associates' lawsuit. Associates appeals from that order of the trial court.

I.

In this case the trial court granted Franklin's motion for judgment on the pleadings pursuant to Tenn. R. Civ. P. 12.03. When a motion for judgment on the pleadings is made by the defendant, it is in effect a motion to dismiss for failure to state a claim upon which relief can be granted. *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998). Such a motion admits all of the relevant facts alleged in the complaint as true but asserts that such facts cannot constitute a cause of action. *Id.*; *see also Lavin v. Jordon*, 16 S.W.3d 362, 364 (Tenn. 2000); *McClenahan v. Cooley*, 806 S.W.2d 767, 768 (Tenn. 1991); *Lewis v. Allen*, 698 S.W.2d 58, 59 (Tenn. 1985); *Gray v. McDonald's Corp.*, 874 S.W.2d 44, 45 (Tenn. Ct. App. 1993).

In other words "In considering a Rule 12.03 TRCP motion, all of the facts alleged in the complaint must be taken as true and then the issue is whether those facts state a cause of action that should be decided by a [court]." *Gray*, 874 S.W.2d at 45; *see also McClenahan*, 806 S.W.2d at 768.

---

[2]The Lampleys had given a mortgage to Pinnacle Mortgage Company on November 1, 1993, on the Achievement Drive property for a loan of $76,168. Later, on November 2, 1995, the Lampleys gave a second mortgage to Chisolm & Associates for a loan of $5,500. Associates alleges that the proceeds from its loan were used, in part, to pay off these prior mortgages. Attached to its complaint are an affidavit of the closing attorney and the closing statement reflecting that checks for $75,133.69 and $3,526 were delivered to the holders of the prior mortgages.

When deciding on such a motion the court is to "construe the complaint liberally in favor of the plaintiff . . . and deny the motion unless it appears that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief." *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999).

## II.

Franklin's position rests upon the fact that its deed of trust was filed first and that its instrument is entitled to priority by virtue of Tenn. Code Ann. § 66-26-105,[3] which provides that a first-registered instrument, including a mortgage or deed of trust, has preference over later-filed instruments unless the holder of the first-filed had notice of the pre-existing but later-filed instrument. This statute is part of Tennessee's recording system, and along with Tenn. Code Ann. §§ 66-26-102 and 103, establish the basic principles of that system, whose operation has been described as follows:

> It is perceived there are five leading propositions embraced in the [recording statutes]: (1) That, as between the parties themselves and their heirs and representatives, such instruments take effect and are good without regard to registration; (2) that they also take effect and are equally good as to all persons who have actual notice of them from the date of such notice, except creditors; (3) that as to creditors (that is, of the vendor) they are inoperative, ineffective, and practically nonexistent until so noted for registration . . .; (5) that upon being so "noted for registration" they become at once "notice to all the world," and so effective as to all the world.

*Wilkins v. McCorkle*, 112 Tenn. 688, 697-98, 80 S.W. 834, 835 (1904).

Under Tenn. Code Ann. § 66-26-105, a first-filed instrument has preference over a later-filed document, even one which was executed first. *Harris v. Buchignani*, 199 Tenn. 105, 113, 285 S.W.2d 108 (1955). This preference is not available where the party claiming under the subsequent instrument had "full notice" of the prior unrecorded one. Tenn. Code Ann. § 66-26-105.[4]

---

[3]Courts have described the purpose or intent of T.C.A. § 66-26-105 as "to resolve the situation created by a dishonest landowner who knowingly or negligently conveys the same land more than once" and stated that this "statute [is] designed to avoid inequity, not to create or promote it." *Watson v. Watson*, 658 S.W.2d 132, 134 (Tenn. Ct. App. 1983).

[4]     Notice may be imparted in several ways. There may be actual notice, which is the equivalent of personal knowledge on the part of the purchaser, or there may be record notice (sometimes called 'constructive' notice), deriving from the recordation of the prior instrument or something making reference to is. Finally, there is a form commonly referred to as inquiry notice, which exists when the

(continued...)

Yet, the statute limits the effect of a race to the courthouse by providing that a party claiming a priority status under a subsequent mortgage who has notice of the prior mortgage, will not gain priority status. Thus, priority of registered instruments is governed by a race-notice statute in Tennessee. However, it has been held that priority may be affected by provisions in the mortgage.

*In Re Total Care, Inc.*, 102 B.R. 646, 650 (Bankr. W.D. Tenn. 1989).

Courts recognize, however, exceptions to the first-filed rule which are based upon facts not disclosed by a search of recorded instruments. Among those are subrogation or equitable assignment. For example, in *Third Nat'l Bank v. Highlands Ins. Co.*, 603 S.W.2d 730 (Tenn. 1980), our Supreme Court held that a surety on a contractor's performance bond is subrogated to the rights of the contractor to monies earned before default. The court held that the surety is essentially "secured" by its right of subrogation and that such "right of subrogation, being created by operation of law and not by written instrument, is not subject to recordation. . . ." *Id.* at 733. Consequently, the surety's unrecorded right of subrogation defeated, or took priority over, intervening creditors, in that case a bank with a security interest in the contractor's inventory, accounts receivable and contract rights and proceeds. The financing statement evidencing the security interest was filed after the performance bond was issued.

It is this subrogation exception to the first-filed rule that forms the basis of Associates' claim. Associates takes the position that the priority apparently given Franklin by the first-filed rule is irrelevant because Associates took the priority of the older mortgages its loan paid off. Based upon the doctrine of equitable subrogation, Associates argues that it was subrogated to the rights of the prior creditors and, consequently, it is entitled to priority to the extent its loan was used to pay the senior loans.

### III.

Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Blakenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999) (citing *Castleman Constr. Co. v. Pennington*, 222 Tenn. 82, 92, 432 S.W.2d 669, 674 (1968)). In its most basic form, subrogation means that Party A is substituted for Party B and is allowed to assert the rights and claims that Party B had against Party C. *Id.*

---

[4](...continued)
> purchaser is in possession of information or facts sufficient to cause a reasonable person to make further inquiry as to the existence and content of the unregistered document.

Toxey H. Sewell, *The Tennessee Recording System*, 50 TENN. L. REV. 1, 43-44 (1982).

Our Supreme Court has explained the sources of a right to subrogation, stating such right "may arise by contract" ('conventional subrogation') by application of equitable principles of law ('legal subrogation'), or by application of statute ('statutory subrogation')." *Blakenship*, 5 S.W.3d at 650. The doctrine of equitable, or legal, subrogation allows a person who pays the debt of another to assume the creditor's place with respect to the debt. *Castleman Constr. Co.*, 222 Tenn. at 93, 432 S.W.2d at 674. Parties entitled to subrogation on equitable principles include parties who pay off a debt, with the intent of keeping the debt alive, to protect their own interest. *Harrison v. Harrison,* 149 Tenn. 601, 606, 259 S.W. 906, 907 (1923). This includes "subsequent encumbrancers paying off a prior encumbrance." *Id.*

The distinctions in the types of subrogation relate to the source of the right and the determination of whether a right to claim subrogation exists. *Castleman Constr. Co.*, 222 Tenn. at 95, 432 S.W.2d at 675. Such distinctions do not enter into the separate question of enforcement of the right or application of the remedy of subrogation. The question of whether subrogation will be afforded is answered by equitable principles. *Id.* 222 Tenn. at 97, 432 S.W.2d at 676. Subrogation is a remedy whose application depends upon the balancing of the equities involved. *See Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F. Supp. 2d 785, 792 (W.D. Tenn. 1998). Subrogation "will not be enforced when it would work injustice to the rights of those having equities." *Castleman Constr. Co*, 222 Tenn. at 94, 432 S.W.2d at 674.

Subrogation is a creature of equity and, as such, its principles are naturally flexible. *Castleman Constr. Co.*, 222 Tenn. at 95, 432 S.W.2d at 675; *Walker v. Walker*, 138 Tenn. 679, 682, 200 S.W. 825, 825 (1917). The doctrine of equitable subrogation is one "which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it." *Dixon v. Morgan*, 154 Tenn. 389, 397-98, 285 S.W. 558, 560 (1926). The doctrine:

> Rests upon the maxim that no one shall be enriched by another's loss, and may be involved wherever justice demands its application . . . . The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice.

*Id.*

Subrogation is not a universal remedy for persons who have lost their money, and the court will not extend the doctrine of equitable subrogation beyond the set of principles on which it rests. *Cole v. Patty*, 175 Tenn. 334, 338, 134 S.W.2d 160, 162 (1939); *Almany v. Christie*, No. 01-A-01-9608-CH-00376, 1997 Tenn. App. LEXIS 111, at *1 (Tenn. Ct. App. Feb. 21, 1997) (no Tenn. R. App. P. 11 application filed); 83 C.J.S. *Subrogation* § 6 (2000). Even a party who establishes a basis for asserting a right of subrogation must still carry the burden of demonstrating that the equities of the case entitle it to the remedy. *Title Guar. & Trust Co. v. Johnson*, 485 S.W.2d 764 (Tenn. Ct. App. 1972).

In balancing the equities between the parties, the negligence of the party seeking subrogation is a relevant factor for consideration. In *Dixon*, the Tennessee Supreme Court thoroughly examined the degree of negligence which may preclude equitable relief and determined that a party will be precluded only where he is guilty of culpable negligence. *Id.* 154 Tenn. at 398, 258 S.W. at 561-63. In that case, the court granted subrogation to Mr. Dixon who purchased land by paying the mortgagee of his seller. Mr. Dixon did not search the records and was unaware of the existence of other deeds of trust at the time of his purchase, assuming from his conversations with the seller, "his friend, neighbor, and fellow churchman," that the only encumbrance on the property was the one he paid off. The court found that Mr. Dixon owed no duty to the bank holding the intervening encumbrance to search the records, that the bank suffered no injury or loss by his failure to perform such search, and that he was not guilty of culpable negligence. *Id.* 154 Tenn. at 406, 258 S.W. 562. In any event, the degree of negligence and its consequence must depend to a great extent upon the factual circumstances involved. *Castleman Constr. Co.*, 222 Tenn. at 98, 432 S.W.2d at 677. In *Castleman*, the Supreme Court granted the remedy of subrogation to a title company even though the title company was negligent in failing to discover a prior encumbrance.[5] *Id.*

The harm suffered by third parties if subrogation is granted is another factor to be considered as it is part of the weighing of equities. Even clear or culpable negligence will not prevent an equitable remedy if the other party will not be prejudiced thereby. *Dixon*, 154 Tenn. at 404, 285 S.W. at 562. "[W]here no one is injured by the mistake other than the party himself, and no one has changed his position in consequence of what has been done and of the mistake, relief may be granted, even though a high degree of care has not been exercised." *Id.* (quoting 21 Corpus Juris, 88).

Again, the important principle is that subrogation is an equitable remedy, the grant or denial of which depends upon weighing the equities between the parties. Nonetheless:

> To entitle one to subrogation, his equity must be strong and his case clear, since it will not be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others. Where equities are equal, there is no right of subrogation.

*Castleman Constr. Co.*, 222 Tenn. at 94, 432 S.W.2d at 675.

IV.

Questions of priorities when a creditor pays off an earlier encumbrance and takes security in the previously-encumbered property arise in the context of mortgage refinancing, as appears to be the situation herein. Courts and other authorities have developed principles to be applied in

---

[5]Absent more information about the facts surrounding each of the loans, any negligence by Associates appears to lie in its delay in filing its deed of trust.

refinance situations which provide guidance. For example, the Restatement has addressed the issues, proposing the following:

§ 7.6 Subrogation

(a)     One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

(b)     By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:

     (1)     in order to protect his or her interest;

     (2)     under a legal duty to do so;

     (3)     on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or

     (4)     upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

RESTATEMENT (THIRD) OF THE LAW OF PROPERTY (MORTGAGES) § 7.6 (1998). In explaining the four examples listed, the authors find the last to include a re-finance situation.

> *Performance at the request of the debtor.* A mortgage debtor may ask another person to discharge the debt. In some circumstances, the payor who does so is warranted in receiving, by subrogation, the benefit and priority of the mortgage paid. The most common context for this sort of subrogation is the "refinancing" of a mortgage loan; that is, the payment of a loan with the proceeds of another loan.

> . . . .

> Perhaps the case occurring most frequently is that in which the payor is actually given a mortgage on the real estate, but in the absence of subrogation it would be subordinate to some intervening interest, such as a junior lien. Here subrogation is entirely appropriate, and by virtue of it the payor has the priority of the original mortgage that was discharged. This priority is often of critical importance,

since it will place the payor's security in a position superior to intervening liens and other interests in the real estate. The holders of such intervening interests can hardly complain of this result, for it does not harm them; their position is not materially prejudiced, but is simply unchanged.

RESTATEMENT, *supra*, §7.6 comment e, at 519.

The Restatement incorporates the principles of equity in its "unjust enrichment" language and in its requirement that subrogation "not materially prejudice the holders of intervening interest." The comments explain further:

> Subrogation will be recognized only if it will not materially prejudice the holders of intervening interests. The most obvious illustration is that of a payor who lends the mortgagor more money than is necessary to discharge the preexisting mortgage. The payor is subrogated only to the extent that the funds disbursed are actually applied toward payment of the prior lien. There is no right of subrogation with respect to any excess funds.

> Similarly, if the payor demands a higher interest rate than prevailed under the original mortgage loan, the positions of intervening interest holders may be jeopardized, since the increased interest may result in the mortgage's having a higher balance at the time it is later foreclosed. Subrogation should be granted only to the extent of the debt balance that would have existed if the interest rate had been unchanged. This reasoning is inapplicable if the original mortgage provided for variable or adjustable interest, and the interest on the refinancing loan falls within the parameters thus established.

RESTATEMENT, *supra*, §7.6 comment e, at 520.

The Restatement rule places importance on the reasonable expectation of the payor that by paying off prior encumbrances its mortgage would have first priority. The rule does not include consideration of knowledge or notice of the intervening encumbrance.[6] However, as the Restatement comments acknowledge, many courts consider knowledge at the time of payment significant and courts in a number of states have found that such notice, at least actual notice, of a junior or intervening encumbrance bars subrogation to a prior encumbrance.[7] *See*, *e.g.*, *Han v. United States*,

---

[6]The comments to § 7.6 indicate such knowledge by the payor of an intervening or junior interest is not necessarily relevant. Because lenders who provide refinancing ordinarily want and expect to get security with a priority equal to that of the mortgages being paid, their knowledge of intervening junior mortgages does not affect their expectations, according to the reasoning.

[7]"Most of the cases disqualify the payor who has actual knowledge of the intervening interest, although they do not consider constructive notice from the public records to impair the payor's right to subrogation." RESTATEMENT, (continued...)

944 F.2d 526 (9th Cir. 1991) (under California law, equitable subrogation is denied to a party who has actual knowledge of an existing encumbrance); *Bankers Trust Co. v. United States of America*, 25 P.3d 877, 882 (Kan. 2001) (although not necessarily the majority rule, Kansas law is in accord with the many jurisdictions which focus on whether a party had actual notice of an intervening interest before applying equitable subrogation and disagreeing with Restatement's position that knowledge is not necessarily relevant); *First Fidelity Bank v. Travelers Mortgage Services*, 693 A.2d 525 (N.J. Sup. 1997) (where lender had actual knowledge of second mortgage when it paid off senior mortgage, it was not entitled to be equitably subrogated to the senior mortgagee's priority even though second mortgagee would be enriched by denial of subrogation). In *G.E. Mortgage Services, Inc. v. Levenson*, 657 A.2d 1170, 1172 (Md. 1995), the Maryland Supreme Court stated:

> Where a lender has advanced money for the purpose of discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is *if he did so in ignorance of junior liens* or other interests he will be subrogated to the prior lien.

*Id*. (emphasis added).

The Tennessee Supreme Court in *Dixon* noted that some courts hold that a party is precluded from an equitable subrogation action where he has actual notice and that other courts hold that a party is precluded when he has constructive notice of a junior lien holder. Instead of following either of these rules, the court held that a party guilty of culpable negligence would be precluded from asserting a claim based on equitable subrogation. In *Dixon* the negligence asserted was the failure to search the records and the consequent failure to discover a prior recorded encumbrance, and the court found that under the circumstances, this was not culpable negligence. However, we interpret *Dixon* as implying that a party with actual notice may not have a claim for equitable subrogation. *Dixon*, 154 Tenn. at 411, 285 S.W. at 564.

Whether or not actual knowledge is a *per se* bar to subrogation, we are not persuaded that a party's actual knowledge is irrelevant to the question of whether the equitable remedy of subrogation should be granted. It is a relevant factor in consideration of the negligence to be attributed to the party seeking subrogation, especially in cases involving a sophisticated institution in the business of making mortgage loans. *But see Castleman Constr. Co.*, 222 Tenn. at 99, 432 S.W.2d at 677 (holding that a title insurance company was negligent in discovering prior encumbrances but still entitled to subrogation). Similarly, it is relevant to the reasonableness of a payor's expectation that it would take the priority of the mortgages it paid off, particularly in the absence of an agreement regarding assignment or priorty.

---

[7](...continued)
*supra*, § 7.6 comment e, at 520.

The record before us is devoid of information regarding the knowledge of either Franklin or Associates about the other's loan and any information about the expectations of either or the terms of Franklin's arrangement with the property owners. We are not even informed of when filings were made documenting the release of the 1993 and 1994 mortgages. The record, consisting of only the pleadings, does not reveal many of the facts which would be relevant to a determination of where the equities lie.

## IV.

Because Associates alleged it paid off the prior encumbrances as part of its loan to the Lampleys, it has stated a claim for subrogation sufficient to require a balancing of the equities between the parties to determine if that equitable remedy should be granted. Accordingly, we reverse the trial court's grant of judgment on the pleadings and remand for further proceedings to determine whether subrogation should be granted in view of the facts and circumstances found and the principles set out herein. Costs of this appeal are taxed to the appellee, Franklin National Bank, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE