## FIREMAN'S FUND INSURANCE COMPANY

v.

## The UNITED STATES.

### No. 377–66.

United States Court of Claims.

Feb. 20, 1970.

Edward Gallagher, Washington, D. C., attorney of record, for plaintiff.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

In August of 1958, Construction Management Corporation contracted with the United States through the Corps of Engineers for the modification of an existing power plant at Kindley Air Force Base in Bermuda at an adjusted contract price of $759,179.56. Plaintiff, a surety company, issued payment and performance bonds for the contract, pursuant to the Miller Act, 49 Stat. 793 (1935), as amended, 40 U.S.C. § 270a et seq. (1964). Plaintiff now seeks to recover from the Government a contract payment alleged to have been made improperly to Construction Management Corporation.

In connection with performance, the prime contractor entered into an agreement with English Electric Export and Trading Company, Ltd., for the supply of an engine and parts for a generator to be installed in the power plant at a total price of approximately $170,000. On January 26, 1960, English Electric notified plaintiff of Construction Management Corporation's refusal to pay invoices totaling $168,345. A copy of this letter was sent to the Corps of Engineers in Jacksonville, Florida. On October 10, 1961, English Electric instituted an action in the United States District Court for the Southern District of New York, under the Miller Act, against the prime contractor and plaintiff surety for nonpayment.

The contractor satisfactorily completed the contract on November 4, 1960, at which time there were seven appeals by the contractor pending from decisions concerning disputes arising out of the contract. On April 16, 1962, the Corps of Engineers Board of Contract Appeals issued its decision on the contractor's main appeal, involving a considerably larger amount than the total of the other six appeals. On the basis of the formula for settlement set forth in the Board's decision, the contracting officer and the contractor negotiated a settlement of the disputes covered by the seven appeals. It was agreed that the contractor would be paid a total of $78,100, subject to the qualifications (1) that the contracting officer's agreement was subject to his obtaining the necessary funds to make the final payment, and (2) that the contractor's agreement was subject to its receiving payment as soon as possible.

Since the applicable Armed Services Procurement Regulation contemplated that consent of the surety should be obtained to increase the penal amount of the payment bond protection when the contract price was increased by as much as $50,000, representatives of the contractor were requested to obtain such consent of the surety. Instead of requesting the surety to increase the amount of the payment bond protection, the contractor asked the surety to consent to the final payment under the contract to the contractor. The request was made on December 14, 1962. It was a condition of the payment bond that the contractor would pay promptly all bills incurred in connection with the performance of contract work, and suit had already been instituted against plaintiff and the contractor by English Electric for nonpayment. Consequently, plaintiff refused to consent to a direct payment to contractor of any further money due or to become due under the contract.

Instead, plaintiff immediately wired the contracting officer on December 14, 1962, demanding that the final payment not be paid to the contractor but to plaintiff in order that the claim of English Electric could be satisfied, and the suit which it had filed under the terms of the bond could be settled. Nevertheless, the contracting officer, noting that the supplier's claim represented an unliquidated liability, issued Contract Modification No. 17 on December 21, 1962, in the amount of $78,100. The modification was accepted, the final payment of $78,100 was made to the contractor on the same day, and the contract was administratively closed.

The Miller Act suit by English Electric was settled by the payment of $182,250 by Fireman's Fund Insurance Company, without contribution or reimbursement from Construction Management Corporation, on January 20, 1969. The contractor not only appeared in the suit to contest the right of English Electric to recover but filed a counterclaim against it. The litigation was protracted and was not concluded until settlement was reached in December 1968.

■ Plaintiff surety now seeks to recover the $78,100 which defendant paid to the contractor over the objection of plaintiff and after notice of the pending suit against plaintiff on the payment bond. Relying on this court's decisions in Newark Ins. Co. v. United States, 169 F.Supp. 955, 144 Ct.Cl. 655 (1959), and Home Indem. Co. v. United States, 376 F.2d 890, 180 Ct.Cl. 173 (1967), among others, plaintiff maintains that, in light of the facts recited above, the Government became liable to it by making the final payment to the contractor. We agree.

We find no controlling distinctions between the facts in this case and those upon which our decision in Home Indem. Co. v. United States, *supra*, was based. The fact that the $78,100 was paid to the contractor as the result of a settlement, negotiated by adopting a formula set forth in the decision of the Corps of Engineers Board of Contract Appeals, does not alter the fact that it was a final payment under the contract. The payment was effected by a change order, which added that amount to the total estimated consideration of the contract in accordance with a practice frequently followed after a decision by a board of contract appeals. More than two years before the payment was made, the contracting officer had written notice that the contractor had failed to pay English Electric for material supplied as a part of the basic contract. By a telegram of December 14, 1962, and by letter of December 18, 1962, both of which were received by the contracting officer before the final payment to the contractor was made, the surety asserted its equitable rights to the fund, gave notice that English Electric had instituted suit against the contractor, and demanded that the contract balance be paid to the surety.

■ The failure of the contractor to pay for the material obtained from English Electric was a breach of the contract with the Government, because "the terms of the [payment] bond are read into the contract, and there is default under the contract where there is default under the bond." Martin v. National Sur. Co., 300 U.S. 588, 598, 57 S. Ct. 531, 81 L.Ed. 822 (1937). As for the surety, it is clear that its rights of subrogation and property interest in the final contract payment exist when the surety is called upon to pay a materialman to the same extent as when it is required to complete the contract. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). As we noted in *Home Indem. Co.*, 376 F.2d at 893, 180 Ct.Cl. at p. 177:

The defendant contends quite correctly that the surety's right is only a potential one which does not become an actuality until the surety satisfies a debt of its principal. However, the surety's rights of subrogation relate back to the date of the execution of the surety bonds, and the contractor can give no one a greater right in the retained percentages than that of the surety. Once the contractor's claims

are satisfied by the surety, it is entitled to look to the retained fund for reimbursement. Nat'l Sur. Corp. v. United States, 133 F.Supp. 381, 384, 132 Ct.Cl. 724, 728–729 (1955) [petition for certiorari of 3d-party defendant denied, 350 U.S. 902, 76 S.Ct. 181, 100 L Ed. 793]; Continental Cas. Co. v. United States, 169 F.Supp. 945, 947, 145 Ct.Cl. 99, 103 (1959).

■ The Government is not relieved of liability, because the surety had not satisfied the claim of the supplier at the time the Government was ready to make the final payment to the contractor. Rather, the pending litigation in the district court and the surety's demand demonstrated a breach of the contractor's obligation to the Government, and it assumed the risk of liability to the surety when the contracting officer failed to withhold the funds until the rights of the parties were determined. Newark Ins. Co. v. United States, 169 F.Supp. 955, 144 Ct.Cl. 655 (1959). In this case, it would have been wholly unrealistic to require the surety to satisfy the supplier's claim prior to the completion of the payment procedures by the Government. The contractor vigorously contested the claim of English Electric, and the surety's liability could not be ascertained until the litigation was terminated. Under the circumstances, the surety had no right to pay the supplier until the amount of its liability was determined in the district court action.

■ There remains for consideration the defendant's final defense. It says that since the plaintiff surety refused to consent to an increase in its bond protection in the amount of the $78,100 modification, the payment made by the Government is outside the coverage of plaintiff's bond. This contention is based upon Armed Services Procurement Regulation 10–104.2 [32 C.F.R. (1961 ed.)], which provides in substance that additional payment bond protection shall be required in connection with any modification of a Government contract that is expected to increase the contract price by $50,000. The defendant also relies

on Armed Services Procurement Regulation 10–203, entitled "Consent of Surety" and reads as follows:

In connection with any amendment, modification or supplemental agreement which would otherwise effect the release of a surety, or in any other situation as prescribed by each respective Department, the contracting officer shall obtain the written consent thereto of the surety or sureties on the existing bond or bonds (notwithstanding the fact that there may be an additional bond supported by a new surety); *provided*, that no such consent need be obtained if there is an increased or additional bond supported by the same surety or sureties. [32 C.F.R. (1961 ed.)]

We reject the Government's contention on two grounds: There was no need in this instance to obtain the surety's consent to the modification, because the payment bond executed by plaintiff expressly provided:

NOW THEREFORE, if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, *notice of which modifications to the surety being hereby waived*, then this obligation to be void; otherwise to remain in full force and virtue. (Emphasis supplied.)

Moreover, it has not been shown that the surety was requested to increase the extent of its bond coverage, or that the contracting officer, who had the duty to enforce the procurement regulations, communicated with plaintiff about the matter. It is true that the contracting officer requested the contractor to obtain the surety's consent but, as shown by the affidavit attached to plaintiff's brief, the contractor asked the surety to give its consent for the Government's payment of the money to the contractor rather than to an increase in the amount of the bond protection. Since the suit by English Electric against the contrac-

tor and the surety had been pending for more than a year at the time the contractor made the request, the surety understandably refused to waive its rights in the fund by agreeing that the money be paid directly to the contractor. Instead and as previously stated, the surety declared its right to have the fund utilized for the purpose of safeguarding the surety from a liability, which had been asserted against it in the suit by English Electric.

For the reasons stated, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied. Plaintiff is entitled to recover $78,100, and judgment is rendered against defendant in that amount.