**TRADESMEN INTERNATIONAL, INC., Plaintiff,**

v.

**LOCKHEED MARTIN CORPORATION, Defendant.**

**No. 02–2183–JWL.**

United States District Court, D. Kansas.

Jan. 27, 2003.

Samuel P. Logan, Foulston Siefkin LLP, Overland Park, KS, for plaintiff.

Christopher Allman, Office of United States Attorney, Kansas City, KS, for U.S. Postal Service.

William J. DeBauche, John M. Waldeck, Michelle D. Geno, Niewald, Waldeck & Brown, P.C., Kansas City, MO, Daniel J. King, Natalie McDaniel, King & Spalding, Atlanta, GA, for Lockheed Martin Corp.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This is an action by a subcontractor to recover amounts due for labor provided by it on a federal postal facility construction project. The United States Postal Service ("Postal Service") entered into a $73 million contract with Lockheed Martin Corporation ("Lockheed Martin") to supply and install automated parcel sorting equipment, known as Singulator Scan Induction Units ("SSIUs"), at various locations including Springfield, Massachusetts and Kansas City, Missouri. Lockheed Martin subcontracted with WestPac Electric, Inc. ("WestPac") to install a portion of the equipment. WestPac, in turn, sub-subcontracted with Tradesmen International, Inc. ("Tradesmen") to provide labor to West-Pac. Tradesmen asserts that it provided labor for WestPac, yet WestPac failed to pay Tradesmen the $86,624.32 it allegedly owes under their contract. According to Tradesmen, WestPac is now insolvent and judgment proof. Thus, Tradesmen brought this action against Lockheed Martin and the Postal Service in an attempt to recover the $86,624.32.

On August 1, 2002, Tradesmen filed its first amended complaint, which included an unjust enrichment claim against the Postal Service and Lockheed Martin, a third-party beneficiary breach of promise claim against Lockheed Martin, and a claim seeking an equitable lien on funds retained by the Postal Service and Lockheed Martin. Lockheed Martin and Tradesmen subsequently filed motions to dismiss each of the claims in the first amended complaint. On November 1, 2002, this court issued an order granting Lockheed Martin's and the Postal Service's motions to dismiss plaintiff's first amended complaint. Specifically, the court held that the doctrine of sovereign immunity barred Tradesmen's claims

against the Postal Service, and Tradesmen failed to state a claim with regard to each of its three claims against Lockheed Martin. This court, however, granted Tradesmen leave to amend its unjust enrichment and equitable lien claims against Lockheed Martin in an attempt to cure certain deficiencies in the claims. Following this ruling, Tradesmen elected to file a second amended complaint alleging an equitable lien claim against Lockheed Martin.

The matter is now before the court on Lockheed Martin's motion to dismiss Tradesmen's equitable lien claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 42). Specifically, Lockheed Martin argues that Tradesmen has failed to establish that Lockheed Martin has retained funds owed to WestPac and, alternatively, that the equities do not favor granting Tradesmen an equitable lien. Because the court finds that Tradesmen has alleged that Lockheed Martin has retained funds owed to WestPac, and Tradesmen's allegations do support an equitable lien on the funds retained by Lockheed Martin, the court denies its motion to dismiss.

## I. Standard for Rule 12(b)(1) Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," *Poole v. County of Otero,* 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable in-ferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati,* 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## II. Analysis

The court's November 1, 2002 order dismissed Tradesmen's equitable lien claim because Tradesmen failed to allege that Lockheed Martin retained funds earmarked for WestPac. Tradesmen argues that its second amended complaint cures this deficiency because it alleges that Lockheed Martin wrongfully failed to secure a payment bond despite its knowledge that it should have been required to obtain such a bond; that Lockheed Martin knew of WestPac's serious financial difficulties; that the Postal Service paid Lockheed Martin all or substantially all of the monies owed to it under the parties' contract; that Lockheed Martin actively encouraged Tradesmen's continued services on the project; that Lockheed Martin has failed and refused to compensate Tradesmen, despite Tradesmen's repeated demands for compensation and Lockheed Martin's knowledge that Tradesmen conferred benefits upon it; that Lockheed Martin has "failed and refused to pay WestPac the full amounts WestPac is owed under the subcontract;" that Lockheed Martin "is willfully and deliberately withholding funds owed to WestPac under the subcontract in excess of $2,750,000, which amount includes all amounts owed to Tradesmen for its work performed on the Projects and claimed herein." [1] Relying on these alle-

1. In support of this proposition, Tradesmen points out that WestPac is suing Lockheed

gations, Tradesmen contends that it is entitled to an equitable lien, in an amount of not less than $86,624.32, against the funds retained by Lockheed Martin.

Tradesmen argues that its claim is supported by the case of *Kennedy Elec. Co. v. United States Postal Serv.*, 508 F.2d 954 (10th Cir.1974). In *Kennedy,* a subcontractor who performed work on a post office building, but who was not paid because the contractor was insolvent and no Miller Act bond was posted, brought a "two pronged" equitable lien cause of action against the Postal Service for labor and material furnished. *Id.* at 955. The first prong of his equitable lien related to $35,739.47 that the Postal Service retained, and the second prong related to $190,747.00 that the Postal Service paid to the contractor's assignee in violation of various regulations. *Id.* After considering the equities of the parties' circumstances, the Tenth Circuit held that the subcontractor was entitled to an equitable lien both on the funds retained by the Postal Service and the money wrongfully disbursed to the contractor's assignee. *Id.* at 960.

Lockheed Martin argues that Tradesmen's allegations do not support an equitable lien for two reasons: (1) Tradesmen has failed to allege facts sufficient to support its allegation that Lockheed Martin is in possession of retained funds owed to WestPac; and (2) the equities do not favor granting Tradesmen an equitable lien, even if Tradesmen has properly alleged

that Lockheed Martin has retained funds owed to WestPac. The court cannot agree.

First, Tradesmen's second amended complaint alleges that Lockheed Martin has retained funds owed to WestPac under the parties' contract. Specifically, Tradesmen alleges that "Lockheed Martin is willfully and deliberately withholding funds owed to WestPac under the Subcontract totaling in excess of $2,750,000...." Tradesmen points out in its second amended complaint that WestPac is suing Lockheed Martin in the United States District Court for the Western District of Washington (at Seattle) to recover, among other things, these retained funds. Lockheed Martin attempts to refute this allegation by claiming that it paid WestPac a portion of the money owed under the contract and incurred substantial costs far exceeding the original contract value to complete WestPac's work called for under the contract. To support this proposition, Tradesmen points to its counterclaim to recover these additional incurred costs in the litigation with WestPac. While these arguments are certainly relevant to whether Lockheed Martin has indeed retained funds owed to WestPac, at this stage in the litigation the court is constrained to considering only the allegations in Tradesmen's second amended complaint. Put another way, Lockheed Martin's arguments rest on fact questions that are not appropriate to address on a motion to dismiss.[2] Accordingly, the court concludes that

Martin in the United States District Court for the Western District of Washington (at Seattle) for, among other things, release of the funds Lockheed Martin has retained.

**2.** Of course, if Lockheed Martin files a motion for summary judgment and attaches documentation establishing that it has expended funds to finish the project in excess of its subcontract obligations to WestPac, such evidence would shift the burden to Tradesmen to provide evidence creating a genuine issue of

material fact as to whether Lockheed Martin is in possession of funds owed to WestPac. *See generally* 6 Phil Bruner & Patrick O'Connor, *Bruner and O'Connor on Construction Law* § 19:43 (West 2002) (explaining that when a project is only partially completed, the contractor "is entitled first to complete the project out of remaining contract or loan funds before incurring liability on unpaid claimants").

Tradesmen has alleged that Lockheed Martin has retained funds owed to West-Pac.

Second, the court believes that Tradesmen's allegations are sufficient to establish that, much like in *Kennedy,* the equities weigh in favor of granting Tradesmen an equitable lien on the funds retained by Lockheed Martin. In *Kennedy,* the court stressed the following facts in finding that the equities weighed in favor of granting an equitable lien: the contractor failed to pay the subcontractor, a surety did not exist due to the lack of a Miller Act bond, the owner or contractor received the benefit of the services and material furnished by the subcontractor, and the owner retained a portion of the money earmarked for the contractor. *Kennedy,* 508 F.2d at 960. Similarly, in this action Tradesmen has alleged that WestPac failed to pay it, a surety does not exist due to the lack of a Miller Act bond, the general contractor (Lockheed Martin) received the benefit of the services and material furnished by Tradesmen and also received full payment from the Postal Service for its services, and Lockheed Martin has retained a portion of the money it owes to WestPac under the parties' contract.

Lockheed Martin attempts to distinguish *Kennedy* on three grounds: (1) Lockheed Martin has paid WestPac a substantial amount of money under its contract with WestPac and, therefore, it would be inequitable to hold Lockheed Martin responsible for WestPac's contractual obligations to Tradesmen; (2) in *Kennedy* the court granted a subcontractor relief against the Postal Service, the party who failed to require the posting of a payment bond under the Miller Act; and (3) unlike *Kennedy,* the funds allegedly retained by Lockheed Martin are not "inherited obligated appropriations," but rather disputed

funds. The court does not find these distinctions persuasive.

Lockheed Martin first argues that it would not be equitable to impose a lien on the funds it has retained because it has paid a substantial portion of the contract amount. Such an argument is without merit. *Kennedy* merely requires an allegation that Lockheed Martin has retained a portion of the funds it owes WestPac. *Id.* at 960. Tradesmen has made such an allegation. It has alleged that Lockheed Martin is in possession of approximately $2,750,000 earmarked for WestPac. This allegation is sufficient to support Tradesmen's claim.

Lockheed Martin next argues that *Kennedy* is distinguishable because the Postal Service was the defendant and it entered into a contract without requiring a Miller Act bond. By contrast, in this action Lockheed Martin is a private party that cannot be held responsible for the failure to secure a Miller Act bond. The court does not agree that *Kennedy* hinged on the fact that the Postal Service was the defendant. It is true that in *Kennedy* the Postal Service entered into a contract without requiring a bond in violation of the Miller Act. But the court does not believe that the equities of the case turned exclusively on that point. The opinion stressed that the Postal Service failed to require a Miller Act bond for two reasons. First, to establish the inequity that would occur to the subcontractor if a lien were not imposed and, second, to point out that the Postal Service, in part, created the problem. Regardless of who caused the problem here, Tradesmen is in a position similar to the subcontractor in *Kennedy*—it completed its work on the project yet it has not been paid by the insolvent subcontractor, WestPac, and there is not a surety to protect it because a Miller Act bond was not posted.

Moreover, even if *Kennedy* requires a showing that the party against whom an equitable lien is to be imposed was at fault, Tradesmen has alleged that Lockheed Martin, along with the Postal Service, "deliberately and wrongfully designated the Contract as a procurement contract, even though the Contract was for the construction, repair or alteration of public work within the meaning of 40 USCA § 270a-e, ('the Miller Act')." [3] Thus, Tradesmen has alleged that Lockheed Martin played a role in avoiding the Miller Act bond requirement.[4]

Finally, Lockheed Martin argues that *Kennedy* is distinguishable because it involved "obligated appropriations" to be paid to the contractor who eventually became insolvent. By contrast, in this action Tradesmen has not alleged that the disputed funds (the $2,750,000) were "earmarked" for payment to WestPac. This distinction turns on a fact question. Tradesmen alleges that Lockheed Martin has retained a portion of the funds owed to WestPac and that WestPac is insolvent and cannot pay it. Thus, the facts are analogous to *Kennedy*. Lockheed Martin invites the court to look at its evidence that it has expended funds in excess of the contract price to complete the project. On a motion to dismiss, however, the court is constrained to the allegations in the second amended complaint. Thus, at this stage the court concludes that Tradesmen's allegations are sufficient to state a claim. Accordingly, the court denies Lockheed Martin's motion to dismiss for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Lockheed Martin's motion to dismiss for failure to state a claim (Doc. 42) is denied.

**IT IS SO ORDERED** this ___ day of January, 2003.

---

**3.** Whether Tradesmen can provide evidence that Lockheed Martin was aware that a Miller Act bond should have been posted is unknown; however, at this stage Tradesmen has pled such an allegation.

**4.** The court is aware that the Postal Service has conceded that it inadvertently left the Miller Act bond requirement out of the contract with Lockheed Martin. Such a concession, however, does not foreclose the possibility that Lockheed Martin was independently aware that such a bond should have been posted but chose not to point out the mistake.