# In the United States Court of Federal Claims

No. 12-374C
(Filed: August 1, 2013)

```
**************************************
AEROPLATE CORP., a California        *
corporation,                         *
                                     *
                Plaintiff,           *
                                     *    Subcontractors' Motion to Intervene;
v.                                   *    RCFC 24(a)(2)
                                     *
THE UNITED STATES,                   *
                                     *
                Defendant.           *
**************************************
```

William L. Bruckner, San Diego, CA, for plaintiff.

Jessica R. Toplin, United States Department of Justice, Washington, DC, for defendant.

Leo A. Hackett, Media, PA, for putative defendant-intervenors.

## OPINION AND ORDER

**SWEENEY**, Judge

Plaintiff Aeroplate Corp. alleges that the United States Department of Veterans Affairs ("VA") breached a contract related to the renovation of the VA medical center in Philadelphia, Pennsylvania. U.S. Glass, Inc. and XLE Materials, Inc., two of plaintiff's subcontractors on the project, move to intervene in this suit to obtain and enforce an equitable lien on the funds held by the VA that are set aside for the project or owed to plaintiff. For the reasons set forth below, the court denies the subcontractors' motion to intervene.

## I. BACKGROUND

The VA awarded the medical center renovation contract, contract number VA244-C-1453, to plaintiff on July 30, 2010.[1] Plaintiff then executed a payment bond for the contract

---

[1] The court derives the facts and procedural history in this section from the complaint; a prior motion to intervene by Premier Valley Bank, a judgment creditor of plaintiff; the subcontractors' motion to intervene and attached exhibits; and the filings in United States ex rel. U.S. Glass, Inc., No. 2:12-cv-02634-LFR (E.D. Pa. filed May 15, 2012).

amount, $8,876,145, on September 8, 2010. The surety was an individual, Ronald D. Patterson, who pledged real estate at three locations in support of the bond. The VA issued a notice to proceed on November 3, 2010, and in May 2011, plaintiff hired the putative intervenors to provide materials and labor. The subcontractors submitted invoices to plaintiff in May, June, and July 2011, requesting payment for their work. Plaintiff did not pay the subcontractors. In October 2011, one of the subcontractors–U.S. Glass, Inc.–advised the VA that it had not been paid. However, according to the subcontractors, the VA continued to make payments to plaintiff. On January 31, 2012, the subcontractors submitted claims to the payment bond surety: U.S. Glass, Inc. sought $118,085, and XLE Materials, Inc. sought $58,789.77. The surety has not paid the subcontractors.

The subcontractors filed a Miller Act suit against plaintiff, the surety, and a corporation purportedly owned by the surety on May 15, 2012, in the United States District Court for the Eastern District of Pennsylvania, for the money owed to them for the work that they performed on the project. The three defendants filed an answer on September 11, 2012, which included the following affirmative defense: "The United States Government is the owner of the property and responsible for the payment."

In the meantime, on June 12, 2012, plaintiff filed suit in this court against the United States. Plaintiff alleges that work on the project has been suspended since September 24, 2011, and seeks damages of $688,513.14 for unpaid contract modifications, delays, and the aforementioned suspension of work. On October 24, 2012, the defendants in the district court action, including plaintiff here, sought a stay of the district court proceedings pending the resolution of this suit. In their stay petition, the district court defendants alleged that the United States refused to pay the balance due on the VA medical center renovation contract and that once the suit in the United States Court of Federal Claims was resolved, the subcontractors would be paid in full. The district court denied the stay petition on November 13, 2012; proceedings in that suit remain ongoing.

The subcontractors were not the only parties to file suit against plaintiff for its failure to make payments. After plaintiff defaulted on several loans made by Premier Valley Bank that were secured, in part, by plaintiff's accounts receivable, the bank obtained a judgment against plaintiff in the Fresno County, California Superior Court on March 27, 2013, in the amount of $743,136.24. On May 8, 2013, the bank sought to intervene in this case for the sole purpose of placing a lien on the proceeds, if any, of plaintiff's suits in this court.[2] Due to the bank's failure to assert nonconclusory allegations regarding its interest in plaintiff's claims, the court denied its motion to intervene on June 7, 2013.

---

[2] Plaintiff had two contracts with the VA and alleges breaches of both contracts by the VA in two separate suits. In the other suit, Aeroplate Corp. v. United States, No. 12-377C, which pertains to contract number VA244-C-0876, plaintiff seeks damages of $744,690.95. The subcontractors only seek to intervene in this suit, which pertains to contract number VA244-C-1453.

Subsequently, on June 26, 2013, the subcontractors moved to intervene as plaintiffs. Specifically, the subcontractors "seek to obtain and enforce an equitable lien on funds held by the [VA], including, but not limited to, those funds earmarked for the construction project known as government contract number VA 244-C-1453 as well as other funds owing to [plaintiff]." As the basis for their motion to intervene, they contend that the VA did not properly scrutinize the issuer of the payment bond, that the payment bond did not conform to the relevant legal requirements, and that the VA continued to pay plaintiff despite having notice of plaintiff's failure to pay its subcontractors.[3] Both plaintiff and defendant oppose the subcontractors' motion to intervene.

## II. DISCUSSION

The subcontractors seek to intervene in this suit as a matter of right pursuant to Rule 24(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC"). RCFC 24(a)(2) provides:

> On a timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The requirements of this rule "are to be construed in favor of intervention[.]" Am. Mar. Transp., Inc. v. United States, 870 F.2d 1559 (Fed. Cir. 1989).

### A. Timeliness

Parsing RCFC 24(a)(2)'s requirements, the first prong to satisfy intervention is that the motion must be timely filed. The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has provided factors to consider when determining whether a motion to intervene is timely: (1) the length of time a putative intervenor knew or should have known of its right to intervene prior to filing its motion; (2) the balance of harms–whether the prejudice to the rights of the existing litigants, if intervention is granted, is outweighed by the prejudice an intervenor would suffer if intervention is denied; and (3) the existence of unusual circumstances that weigh in favor of or against the granting of the motion. Belton Indus., Inc. v. United States, 6 F.3d 756, 762 (Fed. Cir. 1993).

---

[3] Although the subcontractors seek intervention as plaintiffs and the bases of their motion to intervene are allegations of wrongdoing by the VA, the allegations in their proposed complaint are not limited to allegations against the United States. Rather, in addition to the two claims of relief for declaratory judgment against the United States, the putative intervenors set forth two claims for relief against plaintiff for Miller Act violations and two claims of relief against plaintiff for breach of contract. Thus, they appear to be aligning themselves against both parties in this case.

According to the subcontractors, they first learned that plaintiff had filed a complaint in this court eight months prior to filing their motion to intervene. The subcontractors do not elaborate or offer anything more to their timeliness argument; consequently, the court will construe their argument to be that an eight-month delay in filing is insignificant. Interestingly, neither plaintiff nor defendant comment on the timeliness of the motion.

Although an eight-month lag in seeking intervention cannot be characterized as proceeding posthaste, RCFC 24(a)(2) requires only that the motion be timely. Because plaintiff amended its complaint and discovery disputes arose after the filing of the amended complaint, this case has not progressed, after eight months, as far down the litigation track as the court finds optimal. Indeed, it is because of the disputes between plaintiff and defendant that discovery in this case can be characterized fairly as being in its nascent stage.[4] Consequently, for the purpose of addressing the timeliness inquiry, neither plaintiff nor defendant would be prejudiced based on the subcontractors' eight-month delay in filing their motion to intervene. Thus, the court finds that the subcontractors' motion to intervene was timely filed.

Of course, the determination that the subcontractors' motion was timely, which merely addresses the first prong of the court's inquiry concerning whether intervention is appropriate, does not decide the pending motion. To prevail on their motion, the subcontractors must also demonstrate, inter alia, an interest in the property or the transaction at issue.

### B. Sufficient Interest Relating to the Property or Transaction

To meet RCFC 24(a)(2)'s interest requirement, a putative intervenor must demonstrate an interest that is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." Am. Mar. Transp., Inc., 870 F.2d at 1561 (emphasis and internal quotation marks omitted). In other words, the interest cannot be indirect or contingent. Id. A putative intervenor must also show that the interest is a "legally protectable interest." Id. (internal quotation marks omitted). A legally protectable interest is "one which the substantive law recognizes as belonging to or being owned by the applicant," and is "something more than merely an economic interest." Id. at 1562 (emphasis and internal quotation marks omitted). In addition, of particular relevance here:

> The interest of an applicant non-party having no privity claim in a contract, the terms of which are disputed by the parties to it, also has not been recognized as

---

[4] On June 10, 2013, defendant filed its first motion to compel discovery responses; its supplemental motion to compel was filed on June 28, 2013. Briefing on these two motions was completed on July 25, 2013. During a July 30, 2013 status conference with the court, the outstanding discovery issues were resolved.

legally protectable, even when the outcome of the contract action is almost certain to have a significant and immediate economic impact on the applicant.

Id. (citing Rosebud Coal Sales Co. v. Andrus, 644 F.2d 849, 851 (10th Cir. 1981)).

The subcontractors contend that they have an interest in the funds held by the VA that were either earmarked for the medical center renovation project or otherwise owed to plaintiff. There can be little dispute that the outcome of these proceedings will have a "significant and immediate impact" on the putative intervenors. If plaintiff prevails, it will receive funds from which the subcontractors could be paid, but if defendant prevails, the chances of recovery from plaintiff become much more slim. Nevertheless, the putative intervenors cannot establish a legally protectable interest.

It is well settled that the court possesses ancillary jurisdiction to "adjudicate issues that are incidental to the court's general jurisdictional authority to render money judgments." Am. Renovation & Constr. Co. v. United States, 65 Fed. Cl. 254, 260 (2005); accord Klamath Irrigation Dist. v. United States, 64 Fed. Cl. 328, 334 (2005). However, ancillary jurisdiction "does not extend to powers specifically excluded from the Court's jurisdiction . . . ." Am. Renovation & Constr. Co., 65 Fed. Cl. at 260. In this case, the putative intervenors are subcontractors, and are not in privity of contract with the United States.[5] Thus, as confirmed by the binding precedent of the Federal Circuit in American Maritime Transport, Inc., the subcontractors have no legally protectable interest in this suit.[6]

---

[5] Indeed, because subcontractors on federal government contracts lack the requisite privity with the United States, the putative intervenors would lack standing to sue the United States in their own name for breach of contract or for an equitable adjustment. Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984); accord Merritt v. United States, 267 U.S. 338, 340 (1925) ("Plaintiff[, a subcontractor,] cannot recover under the Tucker Act. The petition does not allege any contract, express or implied in fact, by the government with the plaintiff to pay the latter . . . ." (citation omitted)); Bell BCI Co. v. United States, 91 Fed. Cl. 664, 669 (2010) ("The only parties who may maintain an action in the trial court based upon a contract are those who have actually entered into a contract with the United States."). To obtain relief, their options are limited to a suit against the prime contractor or pass-through suit against the government brought by the prime contractor. Erickson Air Crane Co., 731 F.2d at 813. Notably, in a decision issued prior to American Maritime Transport, Inc., the United States Claims Court found that a subcontractor's motion to intervene presented the same issue, and raised the same jurisdictional barrier, as a subcontractor's lack of standing to sue the United States on its own behalf. See Techcraft, Inc. v. United States, 13 Cl. Ct. 248 (1987).

[6] The controlling decisional law in this circuit is developed by the United States Supreme Court and the Federal Circuit. See FCC v. Pottsville Broad. Co., 309 U.S. 134, 140 (1940) ("[A] lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid at rest."); Coltec Indus., Inc. v. United States, 454 F.3d

In an effort to avoid this conclusion, the subcontractors analogize their circumstances to those described in Kennedy Electric Co. v. U.S. Postal Service, 508 F.2d 954 (10th Cir. 1974), where a subcontractor brought suit against the United States Postal Service ("USPS") under the Miller Act upon discovering that the prime contractor was insolvent and had not furnished the USPS with a payment bond. The court observed that there was no standing issue because the suit was against an independent entity with the power to sue and be sued, the subcontractor had a direct interest, and there was no bond that could be sued upon. Id. at 959. It ultimately concluded that the subcontractor possessed an equitable lien on contract retainages held by the USPS. Id. at 960. The subcontractors' reliance on Kennedy Electric Co. is unavailing. In addition to it being factually distinguishable, United Elec. Corp. v. United States, 647 F.2d 1082 (Ct. Cl. 1981),[7] the decision was issued more than ten years prior to American Maritime Transport, Inc., and, unlike American Maritime Transport, Inc., is not binding on this court.

Because the putative intervenors–subcontractors who lack privity of contract with the United States–cannot establish that they possess "an interest relating to the property or transaction that is the subject of the action" as required by RCFC 24(a)(2), the court need not address whether they have satisfied the rule's other requirements.

---

1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims.").

[7] In United Electric Corp., the court noted that although the subcontractor's lack of standing to sue the United States was mandated by the Tucker Act, it was not a satisfactory result if the subcontractor failed to receive payment for work that it performed. 647 F.2d at 1087. Reflecting upon the obvious injustice suffered by such a subcontractor, it remarked:

> As we have done before, we stress that the United States may voluntarily choose to make payment, and we believe that it has a nonenforceable obligation to do so, when and if it becomes clear that [the subcontractor] had a valid claim, that contract retainages or other unexpended funds under the contract are available for such payment, and that, if those funds are not paid out, the Government will be receiving a windfall which it should not have. The Government should not "retain both the benefits of the contract and the funds that were to be used to pay for them."

Id. (citations omitted).

### III. CONCLUSION

For the foregoing reasons, the court **DENIES** the subcontractors' motion to intervene.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge
