# District of Columbia
# Court of Appeals

**No. 13-FM-228**

FASHON FORD,

Appellant,

v.

F I L E D

SEP 22 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

**PCS-2553-06**

DARYL B. SNOWDEN,

Appellee,

On Appeal from the Superior Court of the District of Columbia
Family Division

BEFORE: WASHINGTON, *Chief Judge*; MCLEESE, *Associate Judge;* and KING, *Senior Judge.*

## O R D E R

On consideration of the motion, filed by appellant Fashon Ford, to publish this court's September 25, 2015, memorandum opinion and judgment, regarding the above-referenced matter, and no opposition having been filed, it is

ORDERED that the motion to publish the memorandum opinion and judgment is granted, and that the decision be reissued as a published opinion forthwith.

PER CURIAM.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-FM-228

FASHON FORD, APPELLANT,

FILED 9/22/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

V.

DARYL B. SNOWDEN, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(PCS-2553-06)

(Hon. Milton C. Lee, Jr., Trial Judge)

(Argued March 6, 2014                          Decided September 25, 2015)[*]

*Diane Weinroth* for appellant.

Daryl B. Snowden, *pro se*.

*John C. Keeney, Jr.*, with whom *Jennifer Mezey*, *Stephanie Troyer*, and *Karen S. Smith*, were on the brief for *amicus curiae*, The Legal Aid Society of the District of Columbia, in support of appellant.

*Irvin B. Nathan*, Attorney General for the District of Columbia at the time the brief was filed, with whom *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*,

---

[*]    The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment.  It is now being published upon the court's grant of appellant's motion to publish.

Deputy Solicitor General, and *Donna M. Murasky*, Senior Assistant Attorney General, were on the brief for *amicus curiae*, the District of Columbia.

Before WASHINGTON, *Chief Judge*, MCLEESE, *Associate Judge*, and KING, *Senior Judge*.

PER CURIAM:  Appellant, Fashon Ford ("Ms. Ford"), challenges the trial court's order denying her the opportunity to seek child support from appellee, Daryl B. Snowden ("Mr. Snowden"), for the period of time during which Ms. Ford was receiving Temporary Assistance for Needy Families ("TANF") benefits.  Ms. Ford contends that the trial court erred in holding that the government had waived her right to seek such relief by failing to prosecute the action on her behalf.  In addition, she argues that the trial court erred in failing to apply a rebuttable presumption in favor of retroactive child support for the nineteen months[1] prior to the filing of her petition for support, and that the trial judge improperly considered a "private agreement" between Ms. Ford and Mr. Snowden in calculating child

---

[1]  In her brief, appellant seeks support for "24 months" retroactive from the date of filing her reinstated petition pursuant to D.C. Code § 16-916.01 (2012 Repl.) ("D.C. Child Support Guidelines" or "Guidelines").  However, we will refer to this period as nineteen months, as her petition was filed nineteen months after the birth of the child at issue.

support payments.[2]  For the reasons stated below, we affirm in part and reverse and remand in part.

**I.**

Daryl B. Snowden, Jr. was born on May 1, 2006.  On June 21, 2006, Ms. Ford filed a "Petition to Establish Paternity and/or Provide Support" through the District of Columbia Office of the Attorney General ("OAG") in order to seek court-ordered child support from Mr. Snowden.  On November 16, 2006, the trial court dismissed the petition without prejudice because the government informed the court that Ms. Ford requested the petition be dismissed upon the parties reaching a private agreement.[3]  Ms. Ford began receiving TANF on or about February 2007.    The OAG filed a motion to reinstate the support petition on December 3, 2007.  When service was finally effected on February 27, 2010, a DNA test was ordered at Mr. Snowden's request; however, he did not submit samples until ordered to do so at a subsequent hearing on November 9, 2010.

---

[2]  At oral argument, Mr. Snowden represented that he had also filed a Notice of Appeal.  While Mr. Snowden attempted to raise a number of issues at oral argument, because he in fact failed to timely file a Notice of Appeal, those issues are not properly before us.

[3]  Ms. Ford now alleges that there was never a private agreement and that she only agreed to dismiss the case after being pressured by Mr. Snowden.

Upon the DNA test showing Mr. Snowden to be Daryl's father, an adjudication of paternity was entered at the February 25, 2011, hearing.

Pursuant to the D.C. Child Support Guidelines, Ms. Ford sought both prospective child support and retroactive child support for the nineteen months preceding the date of the filing of the petition.[4] While the nineteen-month period partially encompassed months that Ms. Ford was receiving TANF assistance, she was not seeking to include the amounts she received through TANF as part of the retroactive support award. The court entered temporary child support orders of $200 per month on August 12, 2011, and $700 per month on February 9, 2012.

At the May 15, 2012, hearing, an Assistant Attorney General from OAG indicated that, in accordance with their usual practice, they would not attempt to recoup from the noncustodial parent any money paid to appellant during the TANF period. Although Ms. Ford alleged that the payments stopped sooner, the trial court adopted the government's timeline, finding that Ms. Ford received TANF payments from February 2007 until February 28, 2010. In calculating the child

---

[4] Ms. Ford sought retroactive child support for the period of May 1, 2006, the date of Daryl Jr.'s birth, until December 3, 2007, the date the appellant filed her reinstated petition. She received TANF assistance during part of this period (February 2007 to December 3, 2007).

support awards in this case, the trial court took into account the private agreement between Ms. Ford and Mr. Snowden and also considered Mr. Snowden's obligation to pay child support for two other children—one in D.C. and one in New York—in making its determination. The trial court ordered prospective monthly support payments of $405 beginning June 1, 2012, $505 beginning September 1, 2012, and $605 beginning December 1, 2012. Additionally, the trial court awarded retroactive support totaling $16,694 for the period from March 1, 2010, the day after Ms. Ford stopped receiving TANF payments, to August 12, 2011, the date of the first temporary support order, and ordered Mr. Snowden to make payments of $60 per month toward the retroactive support amount in addition to the prospective payments.

At the hearing, Ms. Ford argued that she had the right to recoup the excess amount of support to which she would have been entitled during the period she was receiving TANF.[5] Magistrate Judge Andrea Harnett disagreed, reiterating on multiple occasions her view that a TANF recipient assigns his or her rights for

_____

[5] Ms. Ford also seeks retroactive support for the period from December 3, 2007 (the filing date) to August 12, 2011, when the court first entered a temporary child support order on her behalf, minus any period of time for which she has already been awarded support (March 1, 2010 to August 12, 2011). In essence, she is seeking retroactive support for the post-filing months in which she received TANF assistance (December 2007 to February 2010).

support to the government, and therefore, is not entitled to seek or collect child support for the TANF period.[6]

Ms. Ford filed a motion for review, challenging Magistrate Judge Harnett's support order and, in particular, the denial of her right to sue Mr. Snowden for child support payments to which she was entitled during the period of time when she was also receiving TANF benefits. Associate Judge Milton Lee upheld Magistrate Judge Harnett's support order generally and also agreed with her legal conclusion that the transfer of authority to seek child support effected by D.C. Code § 4-205.19 (b) (2012 Repl.) prevented Ms. Ford from personally seeking child support for the period during which she was receiving public assistance. And, having concluded that only the District could pursue child support payments on her behalf, Judge Lee found that the District had "waived" its right to seek support for the period of time during which Ms. Ford was receiving TANF benefits.

## II.

---

[6] Specifically, the magistrate judge stated that: "[M]y thinking for today is that when she is getting TANF she assigns her rights to the government, she is not allowed to personally collect support for that period."

### A. Whether the District's decision not to sue Mr. Snowden for support provided to Ms. Ford during the TANF period acted to waive her right to seek child support for that period of time.

The primary issue on appeal is whether the District waived Ms. Ford's right to seek child support from Mr. Snowden for the period during which she was receiving TANF benefits by failing to pursue child support payments on her behalf.

Under District of Columbia law, a custodial parent receiving TANF benefits assigns to the District the right to receive child support, but that assignment is limited to the amount of TANF benefits received. D.C. Code § 4-205.19 (b), (c)(4) (2012 Repl.). The limited nature of that assignment suggests that the custodial parent will remain free to assert the right to any additional unpaid child support beyond the TANF benefits. As the District of Columbia asserts,[7] however, a separate provision provides that a custodial parent receiving TANF benefits subrogates his or her right to seek child support to the District. *See* D.C. Code § 46-203 (a). Consequently, the District, as subrogee, has the statutory right to

---

[7] On September 12, 2014, the District of Columbia Office of the Attorney General filed an *amicus curiae* brief in this matter pursuant to our order.

step into the custodial parent's shoes, and seek reimbursement for the benefits the government provided to the custodial parent for child support.

We agree with the District of Columbia that these provisions, read together, are properly understood to permit custodial parents in Ms. Ford's situation to seek payment of additional unpaid child support even if the District of Columbia has elected not to do so. First, the provision limiting the extent of the assignment to the amount of TANF benefits received is the more recent of the two provisions, and the earlier subrogation provision must be understood in light of the later limitation on the scope of the assignment. More generally, subrogation is an equitable remedy designed to protect an insurer's right to recover monies from the party ultimately responsible for any injury caused to the insured. *See District of Columbia v. Aetna Ins. Co.*, 462 A.2d 428, 431 (D.C. 1983) ("[Subrogation] is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties.") (internal quotation marks and citation omitted). In the context of public benefits, we have recognized "an implied statutory *quid pro quo*" whereby in exchange for providing benefits to protect the health and welfare of a dependent person, the government is allowed to stand in that person's shoes and sue to seek recovery for the support it provided from the party ultimately responsible for

providing it in exchange for compensation. *See Edwards v. Bechtel Assocs. Prof'l Corp.*, 466 A.2d 436, 438 (D.C. 1983); *see also Washington Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 940-41 (1984) (interpreting provision of the Longshoremen's and Harbor Workers' Compensation Act as granting contractors immunity from tort liability if they provide compensation insurance where subcontractors fail to do so and holding that subcontractor could not sue contractor because the latter had met its obligations under the statute).  While we have not previously had this issue arise in the context of a child support action, we see no reason to depart from the reasoning in those cases.  Therefore, the question before us is whether the decision of the District, as subrogee, not to exercise its equitable right to seek reimbursement from Mr. Snowden waived Ms. Ford's right to seek support from Mr. Snowden under the child support guidelines for the TANF period.  Based on our review of the applicable statutes and their underlying purposes, we are convinced that the District's decision not to seek child support from Mr. Snowden did not act to waive Ms. Ford's right to seek additional child support.

We determine the correct meaning and application of statutes *de novo*, employing the common devices of statutory interpretation.  *D.C. Appleseed Ctr. for Law & Justice, Inc. v. District of Columbia Dep't of Ins., Sec., & Banking*, 54

A.3d 1188, 1213 (D.C. 2012). Statutory interpretation includes looking to the "language, structure, [and] purpose of the statutory provision." *District of Columbia Office of Human Rights v. District of Columbia Dep't of Corr.*, 40 A.3d 917, 925 (D.C. 2012) (internal citation and quotation marks omitted).

The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language he has used. *Tippett v. Daly*, 10 A.3d 1123, 1126 (D.C. 2010) (en banc) (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)). As we have often stated, "[w]e must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning." *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979). "'The literal words of a statute, however, are not the sole index to legislative intent, but rather, are to be read in light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice.'" *District of Columbia v. Bender*, 906 A.2d 277, 281-82 (D.C. 2006) (quoting *Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C. 2006)). Statutory interpretation is, in other words, a "holistic endeavor," *Washington Gas Light Co. v. Public Serv. Comm'n*, 982 A.2d 691, 716 (D.C. 2009) (internal quotation marks omitted), in which we must "consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme." *Tippett*,

10 A.3d at 1127 (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)); *see also In re T. L. J.*, 413 A.2d 154, 158 (D.C. 1980) ("[W]henever possible, a statute should be interpreted as a harmonious whole." (quoting *United States v. Firestone Tire & Rubber Co.*, 455 F. Supp. 1072, 1079 (D.D.C. 1978))).  For that reason, we should avoid construing a statute at odds with the legislature's purpose. *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 171 (D.C. 2008).

Under District of Columbia law, custodial parents are entitled to support from non-custodial parents to provide for the care and welfare of their children. *See* D.C. Code § 16-916.01 *et seq.*  Further, pursuant to the law, courts will intervene when the non-custodial parent fails to live up to his or her obligation to provide appropriate support for their children.  *See id.*  The purpose behind the legislation is not in dispute.  It is to provide for and protect children.  The law also recognizes that a child's health and welfare cannot always wait for due process of law and, therefore, government funding through TANF is made available to custodial parents to provide funds for food and other necessities for children while efforts are made to pursue support from the non-custodial parent.  *See id.* § 4-202.01 (5) (establishing the TANF program as a category of public assistance).

The statute also provides that the TANF funds are to be reimbursed to the government out of the child support payments made by the non-custodial parent, and thus the right of subrogation provided to the government was never intended to limit the amount of child support that could be recovered from the non-custodial parent to only what was owed to the government. *See id.* § 4-205.19 (b), (c)(4).  In fact, nothing in the plain language and legislative history of the applicable provisions support the trial court's conclusion that a custodial parent waives his or her right to support above and beyond that provided by the government as a *quid pro quo* for receiving TANF support.  For these reasons, it would be inconsistent with the purpose of the Act and inequitable to conclude that a custodial parent waives his or her right to monies under the guidelines that are in excess of the amount that the government is entitled to receive as reimbursement for the benefits it provided.

This interpretation is consistent with how our sister courts have interpreted the rights of the government vis-à-vis the rights of beneficiaries of government benefits in cases with similar statutory subrogation clauses.  In *Potomac Electric Power Co. v. Wynn*, 343 F.2d 295, 298 (D.C. Cir. 1964), PEPCO argued that an employee who had accepted worker's compensation benefits after a work place accident was precluded from suing for additional relief because, under the

worker's compensation statute, the employee subrogated his rights to the government in exchange for receiving those benefits. The trial court specifically recognized the tension in the relationship involving subrogation and the provision of public benefits, observing that "the employer and employee do not always have the same interest in pursuing the third party." *Id.* at 297. Particularly, the trial court noted that in the workers' compensation context, the employee has incentive to sue in his own right because under the statute, he may accept compensation from the employer and still bring suit against the third party. *Id.* Likewise, the employer has a financial incentive to sue on behalf of the employee because the employer may retain one-fifth of the recovery in excess of its expenses and the reimbursement from the employee to which the employer is entitled. *Id.* The court reasoned that the statute was not intended for the employer's exclusive benefit but instead simultaneously benefited the employee by facilitating his recovery from third parties, and ultimately held that the "employee may bring suit against a third party whenever it is evident that the employer-assignee, for whatever reason, does not intend to bring suit." *Id.* at 297-98. Similarly, in *United Security Insurance Co. v. Johnson*, 278 N.W.2d 29, 29-30 (Iowa 1979), an insurer paid all but $100 on a claim arising from an automobile accident. The trial court held that the insurer-subrogee could not maintain an action against the third party tortfeasor because an insurer is only subrogated to the rights of the insured to the extent that it pays the

loss and that where the insurer covers only a portion of the loss, the right of action remains in the insured for the entire loss. *Id.* at 31.

A contrary result here would be unjust, as Ms. Ford would be precluded from ever seeking child support payments—to which she is otherwise entitled under the Guidelines—for the time during which she received TANF benefits simply because the District chose not to pursue those payments, thereby undermining the equitable purpose behind subrogation. *See Aetna*, 462 A.2d at 431. For these reasons, we conclude that the District's choice not to file suit in this case did not waive Ms. Ford's right to seek child support.

**B. Whether the trial court erred in considering the private agreement when calculating retroactive child support.**

The standard of review for child support orders is abuse of discretion. *See Beraki v. Zerabruke*, 4 A.3d 441, 447 (D.C. 2010). The child alone has the right to child support, and under District of Columbia law, parents are obligated to provide support for their children. *Burnette v. Void*, 509 A.2d 606, 608 (D.C. 1986); *see also* D.C. Code § 16-916.01 (c)(3) ("A parent has the responsibility to meet the

child's basic needs, as well as to provide additional child support above the basic needs level."). The trial judge can modify a private support agreement *sua sponte*, or upon the request of a party, if he or she finds that there has been a material change in circumstances sufficient to justify the modification. *Willcher v. Willcher*, 294 A.2d 486, 488 (D.C. 1972); *Wilson v. Craig*, 987 A.2d 1160, 1165-67 (D.C. 2010); D.C. Code § 16-916.01 (t).

Ms. Ford argues that she is entitled to receive child support payments under the Guidelines for the full nineteen-month pre-filing period because, contrary to the trial court's finding, she never had a private agreement with Mr. Snowden and thus, the trial court erred in denying her support for the period of time covered by the alleged agreement. However, we must defer to the trial court's factual finding that a private agreement actually existed unless there is no credible evidence on the record to support the finding. *See Johnson v. United States*, 398 A.2d 354, 364 (D.C. 1979) ("[T]he factual record must be capable of supporting the determination reached by the trial court."). The trial court found that there was a private agreement in place during the pre-filing period based on the 2006 court order dismissing Ms. Ford's original child support petition, which referenced the private agreement as the reason for the dismissal, and Mr. Snowden's periodic payments to Ms. Ford. Based on the evidence viewed in a light most favorable to sustaining

the trial court's order, we cannot say that the evidence relied upon by the trial court here was insufficient to find, by a preponderance of the evidence, that a private agreement existed between Ms. Ford and Mr. Snowden for child support during the pre-filing period and, therefore, Ms. Ford's challenge on that ground to the trial court's ruling is denied.

Alternatively, Ms. Ford argues that the private agreement should have been modified to give her additional retroactive child support above the amount she received per the private agreement. Ms. Ford asserts that, pursuant to D.C. Code § 16-916.01 (t), the trial court is allowed to modify a child support agreement and thus should not have excluded the months the private agreement was in effect from the retroactive support award.[8] She also cites *Lanahan v. Nevius*, 317 A.2d 521

---

[8] We note that the Guidelines merely state that the trial judge has *discretion* to modify an agreement if he or she finds that it is warranted based on the circumstances in a given case. The relevant statute provides that if there is a sufficiently material change in circumstances, "the judicial officer *may* modify any provision of an agreement or settlement relating to child support, without regard to whether the agreement or settlement is entered as a consent order or is incorporated or merged in a court order." D.C. Code § 16-916.01 (t) (emphasis added). Because appellant concedes that the private agreement is governed by the Guidelines, we need not address here the proper standard for modification of an unmerged private agreement. *See Mazza v. Hollis*, 947 A.2d 1177, 1180 (D.C. 2008) (discussing, without determining, whether the standard for modifying unmerged agreements explicated in *Cooper v. Cooper*, 472 A.2d 878, 880 (D.C. 1984), has been superseded by the conflicting standard subsequently outlined in D.C. Code § 16-916.01 (t)).

(D.C. 1974), to support this argument.[9]  However, because Ms. Ford did not raise the issue of the amount of the agreement to the court below, but rather alleged that there was no private agreement in the first instance, neither the trial judge nor the magistrate judge were asked to make any finding of whether a sufficiently material change in circumstances necessitating a modification of the private agreement had occurred.  Thus, her argument that the trial court should have modified the private agreement amount is not properly before us.  *Brown v. United States*, 627 A.2d 499, 508 (D.C. 1993) (noting that defendant may not take one position at trial and a contradictory position on appeal); *Mitchell v. United States*, 569 A.2d 177, 180 (D.C. 1990) (same); *Byrd v. United States*, 502 A.2d 451, 452–453 (D.C. 1985) (same).

Finally, Ms. Ford contends that there is a rebuttable presumption in favor of awarding retroactive child support pursuant to D.C. Code § 16-916.01 (v)(1).  While it is questionable whether this issue has been properly raised on appeal, we

---

[9]  Ms. Ford's citation to this case is not persuasive, as *Lanahan* simply held that a court *may* determine that a child support agreement does not provide an adequate amount of money to meet a parent's legal obligation to support and *may* order the parent to pay a larger sum.  *Id*. at 525.  Furthermore, the court in *Lanahan* found that a child support agreement, like any other contract, is to be enforced by the court in the absence of duress, fraud, concealment, or overreaching.  *Id*. at 524-25.

need not reach this matter because our findings above render this argument moot. We have already stated that Ms. Ford is entitled to pursue support for the TANF period and the trial court did not err in excluding the private agreement period from the retroactive child support award. Consequently, as the private agreement and TANF months cover the entire retroactive period in question, we need not address here the issue of whether a rebuttable presumption still exists under § 16-916.01 (v)(1).

## III.

For the foregoing reasons, the judgment of the trial court is hereby affirmed in part, and reversed and remanded in part for further actions consistent with this opinion.

*So ordered*.